## M. H. ETTINGER v. W. F. JONES.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 2 OF ALLEGHENY COUNTY.

Argued November 4, 1890—Decided January 5, 1891.

In assumpsit for the breach of a contract of marriage, the defendant
put in evidence a formal release executed by the plaintiff after the cause
was at issue. Evidence in rebuttal, tending to show that the release was
procured by fraud, was sufficient to warrant the submission of the fact to
the jury, and the question of its sufficiency to reform or contradict the
release did not arise.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 162 October Term 1890, Sup. Ct.; court below, No. 464
October Term 1888, C. P. No. 2.

On March 16, 1888, Marie H. Ettinger issued capias against
William F. Jones, in assumpsit for breach of an alleged con-
tract to marry the plaintiff. On May 19, 1888, the defendant
pleaded, non-assumpsit, and subsequently added the pleas, ac-
cord and satisfaction, and release under seal.

At the trial on November 21, 1889, the plaintiff adduced
evidence of the contract of marriage as alleged in her state-
ment. The defendant denied the testimony of the plaintiff as
to the contract, and, inter alia, put in evidence the following
paper signed and sealed by the plaintiff and dated December
29, 1888, written under the caption of the case as stated on the
record:

" I, M. H. Ettinger, the plaintiff in the above entitled cause,
do hereby release the above-named defendant, William F. Jones,
from all actions, claims or demands which I now hold against
him for the promises and other matters set forth in the above
entitled action ; and I do hereby acknowledge full satisfaction
of all damages claimed by me therein, and I hereby direct the
prothonotary to mark the said cause settled and discontinued,
and to enter this release of record in said action; and I do
hereby discontinue this said action.

" Witness my hand and seal this 29th day of December,
A. D. 1888."

Charge of Court below.

This paper purported to have been attested by Edward Dorrian and Pat. Mooney. The testimony of the plaintiff, to the effect that her execution of the release was obtained by a trick or fraud on the part of the defendant, and of the defendant in denial thereof, sufficiently appears in the opinion of the Supreme Court.

At the close of the testimony, the court, EWING, P. J., charged the jury in part as follows:

The court is requested by the defendant to instruct the jury:

1. That, under all the evidence in this case, the plaintiff cannot recover.

Answer: Refused.[1]

2. That, if the jury find from the evidence that plaintiff executed the release dated December 29, 1888, then the verdict must be for the defendant.

Answer: Refused.[2]

There are some questions presented in the points that we cannot answer affirmatively, one of them being in the point presented by defendant's counsel, that the release is a bar to this suit. [The plaintiff admits that she signed this release. It is signed as witnessed by two men, who, according to the testimony as I remember it, were not at the house when it was signed; and, if they were not there, the putting of their names on the paper, or the procuring of them to be put there, was a fraud.] [3]

The suit in this case had been brought and had been pending for some considerable time; how long I do not know. [The plaintiff signed the paper and prima facie she is bound by it and cannot recover, unless you believe it was procured from her by fraud. She must be held, to some extent, to have understood what she was doing and with whom she was dealing. When a man or a woman is deceived by another man or woman by a lie, spoken or acted, it is the fault of the liar for that time. If they are deceived the second time, it ordinarily ought to be considered the fault of the party deceived, and yet we know that women will, out of affection, allow men to deceive them day after day and year after year.] [4]

The plaintiff says she signed the release under these circumstances, that he came to her pleading that he was in trouble.

Charge of Court below.

It seems he had been charged with the seduction of another girl in the neighborhood. A suit on that charge was pending which was troubling him, and some suit which he had with the company was alleged as troubling him, and he claimed he could not marry her then, would not marry while these suits were pending ; but if she would release him, then, when these suits were over he would " do what was right ; " in other words, the fair understanding, if she is to be believed, was, that with this release from her, as soon as he was relieved from his other troubles occasioned by these suits, he would be ready to marry her.

He now goes on the witness stand and denies that he said he would marry her. ¬Well, true, he did not say it in words, but his own version and statement shows that he knew she understood him to mean that which he says he did not say. [If he got this release by deliberately giving her to understand that if she signed it he would certainly marry her as soon as he got through with his other troubles, when he had no intention of doing so, then, though he may not have actually made that promise in words, and yet made the promise he did make with the intention of making her believe that, then it was a fraud on her and she is not bound by the release. It is a question of fact for the jury, but the burden is on her. Prima facie this paper relieves the defendant ; but, if it was procured by fraud ; and, taking the relations that they occupied with each other and all the circumstances into consideration, we think there is evidence for the jury to say whether or not it was so procured. If it was not, it is conclusive and your verdict must be for the defendant. If it was procured by fraud, it does not bind the plaintiff, and she is entitled to your verdict for the damages which you think she has suffered, with costs and expenses, and a reasonable figure for the humiliation and disgrace of her rejection after it became known that she was engaged and expected to be married, and the injury to her prospects for a married life.] [5] It may be true that the learned counsel for the defendant has put a proper estimate on the value of his client to a woman, but the jury can hardly be allowed to take that estimate. It is the value that the man might have been to the woman in her estimation. Of course, it is not a case for a verdict for a large amount, because,

so far as appears, the defendant had no property, was simply earning wages. . . . . .

The jury returned a verdict for the plaintiff for $560. A rule for a new trial having been discharged and judgment entered, the defendant took this appeal, assigning for error:

1, 2. The answers to the defendant's points.[1] [2]

3–5. The parts of the charge embraced in [ ] [3 to 5]

*Mr. C. C. Dickey*, for the appellant:

That the release under seal, though without consideration, was binding, counsel cited: Burkholder v. Plank, 69 Pa. 225; Candor's App., 27 Pa. 119; Mack's App., 68 Pa. 231; Kidder v. Kidder, 33 Pa. 268; Sherk v. Endress, 3 W. & S. 255. That parol evidence was inadmissible to control the written release: Thorne v. Warfflein, 100 Pa. 519; Phillips v. Meily, 106 Pa. 536; Martin v. Berens, 67 Pa. 459. That evidence to reform the instrument on the ground of fraud, must be clear, precise and indubitable, and sustained by two witnesses, or by one witness corroborated, etc.: Sylvius v. Kosek, 117 Pa. 67; Thomas v. Loose, 114 Pa. 35; Juniata B. & L. Ass'n v. Hetzel, 103 Pa. 507; North v. Williams, 120 Pa. 109; Jackson v. Payne, 114 Pa. 67; North etc. Ry. Co. v. Swank, 105 Pa. 555; Phillips v. Meily, 106 Pa. 536.

*Mr. W. D. Moore* (with him *Mr. F. C. McGirr*), for the appellee:

" To profess an intent to do or not to do, when the party intends the contrary, is as clear a case of misrepresentation and fraud as could be made : " Bigelow on Fraud, 484. The parties here stood in a fiduciary relation: Lovesly v. Smith, L. R. 15 Ch. D. 955; Rockafellow v. Newcomb, 57 Ill. 186; Tate v. Williamson, 2 Ch. D. 55, 60.

OPINION, MR. CHIEF JUSTICE PAXSON:

The only question of importance in this case is whether the plaintiff was bound by her release. This point was raised by the second assignment, which alleges that the court below refused, at the request of the defendant, to instruct the jury " that if they find from the evidence that the plaintiff executed the

release, dated December 29, 1888, then the verdict must be for the defendant."

The suit was brought to recover damages for breach of a promise of marriage. After the case was at issue and ready for trial, the defendant prepared a formal release, took it to the plaintiff, and procured her signature thereto. The release was formal enough, and, had it been obtained without fraud, the plaintiff would have been out of court. But she alleges that the defendant induced her to sign the paper by falsehood and fraud. It appeared that the defendant was in trouble with another woman, a Miss Graham, and was under bail. Under these circumstances he called upon the plaintiff, and this is her version of what occurred:

"'Well,' he said, 'if you release me until I am not in so much trouble with this Miss Graham, (and a suit of my own with the company, and this suit of yours, makes three suits hanging over me,) then I will do what is right and just by you after that.' I thought; I considered; I knew he hadn't done right by me, but I thought I would look over everything, on his promise. He said: 'If I am bound by law to marry you, I will never marry you; but if you will release me, I will do what is right by you.' I broke down, and he says, 'Don't fret,' and he took me in his arms and kissed me and says: 'You will be all right when I get all right with Miss Graham.' So he went away, and he came in the evening with this paper, and he laid it down before me, and he says: 'Now I have this paper here that I want you to sign.' I had no idea that he would bring a paper to me, and I was all alone. Mrs. Batten wasn't there, and I got up and made a light, and took him in the parlor, and he says: 'I want you to sign this paper.' I says: 'I can't read all the paper. Can you read it?' 'I can't read it either,' he said. Well, then he induced me to sign it, and said it would be all right, when I hesitated about signing it."

The defendant denied having made any such promises as those above stated, in order to procure the release. He admitted going to see her, in order to get the release, when she said to him, "What are you going to do?" To which he replied, "I can't say what I will do yet; I want to get my release to clear my bail, and that is what I want, and we can talk afterwards."

Opinion of the Court.

All this, and much more, was submitted to the jury, under proper instructions, and they have found for the plaintiff. They evidently believed her story, and there was much to commend it to their favor. It was corroborated in some respects, and had upon its face an air of probability. With the facts thus found, it is clear the release was obtained by a trick and a fraud. While he did not in so many words say to the plaintiff, "If you will sign this release, and relieve my bail, I will marry you," yet such was the only rational conclusion to be drawn from his language. The subject of their conversation was their marriage; he was entangled with another woman; he had a suit with some company, thus making three suits hanging over him. When he said "I will do what is right by you, if you release me," he meant marriage, and she understood it was to be marriage. Under these circumstances, it was not only fradulent, but mean, to procure the release, throwing out of view the blandishments which he resorted to as make-weights, and which were well calculated to inspire confidence in his sincerity and continued attachment. We are of opinion that the facts fully justified the learned judge in refusing to affirm the defendant's second point, and the instructions to the jury referred to in the remaining assignments. It is to be further observed that there was no attempt to reform or contradict the release. The paper was admitted, but the allegation was that it had been procured by fraud, which is quite another matter.

Judgment affirmed.

Argued November 4, 1890—Decided January 5, 1891.