John J. Prevost *v.* The Citizens' Ice and Refrigerating Company, Appellant.

*Negligence—Master and servant—Fellow-servant rule—Vice principal.*

A vice principal for whose negligence an employer will be liable to other employees must be either, first, one in whom the employer has placed the entire charge of the business, or of a distinct branch of it, giving him not mere authority to superintend certain work or certain workmen but control of the business, and exercising no discretion or oversight of his own, or, secondly, one to whom he delegates a duty of his own which is a direct, personal and absolute obligation, from which nothing but performance can relieve him.

A chief engineer who has general charge of an engine room and a department, with power to give orders to the men in the department, and to engage men for short jobs in the manager's absence, is not a vice principal, but a foreman, and, as such, a fellow-servant of the men employed in the department.

Where an employer himself assumes control and gives an express order not only what to do, but how to do it, even a vice principal is bound to obey, and becomes for the time being a mere co-employee, whatever his general authority may be under other circumstances ; and the employer is not bound personally to supervise the doing of the work, but is entitled to assume that his orders will be carried out.

Argued Jan. 18, 1898. Appeal, No. 316, Jan. T., 1897, by defendant, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1895, No. 779, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Reversed.

Trespass to recover damages for personal injuries. Before ARNOLD, P. J.

The defendant was engaged in the manufacture of artificial ice. It had a full corps of officers who were actively engaged in supervising the work of the company, among whom may be

185  617
f196 269
185  617
198  356
185  617
f199 128
185      617
f 19 SC ¹470
185      617
206    ¹ 86
185      617
209    ¹166
185      617
27 SC ¹520
185      617
34 SC ¹ 68
185    617
223    ²132
185  617
f225 ¹396

mentioned Mr. Ballingall, president of the company, Mr. Harper, the general manager, in direct charge of the work, and Mr. Wilson, the secretary, who seems also to have frequently given orders directly to workmen, among whom was one Flynn, who was an engineer, in direct charge of the engine.

Attached to the ceiling of the storage room was a set of pipes, arranged in coils, through which there flowed brine which had been reduced to a very low temperature by means of ammonia. The purpose of this was to reduce the temperature of the storage room that the ice there stored might not readily melt. Ballingall, the president of the company, noticing that ice had collected upon the cold pipes, directed Flynn to shut down the brine pump for two or three hours; the effect of which would be, by removing the source of the cold, to soften the ice, and he further directed him that he should then have some one go along the pipes with an ice pick and the coating would then be readily removed. Flynn disobeyed orders and did not shut down the brine pumps. He was not present at the trial, having removed to Florida; but one Corner, who was a mere journeyman, testified that Flynn told him to take an axe and break off the ice from the pipes. Corner took an axe and struck the pipes a hard blow with the blunt end of the axe, with the result that the pipes, with the heavy coating of ice, fell, injuring the plaintiff, who had been employed some time before by the manager, as a kind of " extra," to do such work as might be required from time to time, for which he was paid by the hour when he was actually engaged.

Further facts appear by the opinion of the Supreme Court and the charge of the trial court, which was in part as follows :

It appears that on September 9, 1895, the plaintiff was working in the ice plant of the defendant company, and, while working there, the pipes containing the brine used for manufacturing ice suddenly fell from the ceiling above him, and they, with the ice gathered around them, fell upon him, causing severe injuries; breaking his leg and four of his ribs, bruising him, spraining his back and causing injuries which required him to remain in the house for several months, and which have, in some respects, a permanent character, because they effect his ability to work now. While his leg is healed of the fracture

and he can walk, nevertheless, he says he feels the effects of the injury, and he is not able to do as much work as he formerly did. [The basis of the claim is that the officers of the company superior to him desired those pipes cleaned, and that they gave orders to the men to see to it, to wit: by breaking off the ice with an axe and striking heavy blows upon it, and that those heavy blows struck upon it caused the rings which held it up to break, and all the pipes fell upon the plaintiff.] [4]

It is the duty of employers to provide safe appliances for employees, but they are not always bound to provide the latest improved machinery. The complaint, however, is not so much against the character of the machinery furnished as it is against the manner in which the machinery was ordered to be cleaned. [It is testified that the order to clean was given by the officer of the company to an employee who, obedient to orders, struck the pipes with an axe and thereby caused them to become dislodged, and the pipes and the ice on them fell upon the plaintiff.] [5]  There is another rule of law, that where people are working together, that is, coemployees, and one is injured by the fault of the other, he has no remedy against his employer, because it was his coemployee who caused the injury. That is one of the defenses alleged here, that the injury was caused by the fault of a fellow-workman, and not by the fault of the company. As to that, however, [the plaintiff has produced some testimony showing that the orders to clean these pipes that way were given by a superior officer, principal or vice principal of the company, in which case, the rule that exempts the company from the responsibility for the acts of fellow-servants, does not apply, and the company then becomes responsible for the injury which is the result of orders given by it or by its officers.] [6]

If you are of opinion that the injury was the fault of the workman Corner, that it was Corner's own judgment, his own act, that caused the injury, and that he and Mr. Prevost, the plaintiff, were fellow-servants working together, then the responsibility is chargeable to Corner only and not to the company. [If, on the other hand, you believe that Corner did what he did by direction of some of the officers of the company higher in authority, then that rule of law does not apply and you can find a verdict against the company] [7] for damages in favor

of the plaintiff. That is really the pinch of the case. [What was the relation between these parties? You are to settle it upon the testimony. By whose orders were these pipes hit with the axe? By whose orders was that mode of cleaning adopted? By the orders of the officers of the company principals, or, was it the act of Corner alone, and were Corner and Prevost fellow-servants or colaborers? If you find that Corner and Prevost were fellow-servants, working together in common work, and the accident was caused by the act of Corner, by his judgment in cleaning the pipes that way, it is Corner's fault, and Corner's fault only, and the company is not responsible. If you find, however, that that method of cleaning the pipes was adopted by the company, and they set Corner to clean that way, then the company is responsible to this plaintiff.] [8]

Verdict and judgment for plaintiff for $3,000. Defendant appealed.

*Errors assigned* among others were (4-8) above instructions, quoting them.

*J. Howard Gendell,* for appellant.—Defendant's officers were not bound to stand by while the work was in actual progress to see that it was properly done. If the proper orders were given, they might assume that they were carried out: Durst v. Carnegie Steel Co., 173 Pa. 162; McKinzie v. Philadelphia, 46 Leg. Int. 506; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185; Walton v. Bryn Mawr Hotel Co., 160 Pa. 3; New York, etc., R. R. v. Bell, 112 Pa. 400; Lehigh Valley Coal Co. v. Jones, 86 Pa. 432; Mullan v. Steamship Co., 78 Pa. 25.

A mere engineer who directs, not the construction, but the cleaning only, of pipes, is a fellow-servant: Ross v. Walker, 139 Pa. 42; Kinney v. Corbin, 132 Pa. 341; Duffy v. Oliver, 131 Pa. 203; Nemier v. Riter, 179 Pa. 557; Phila. Iron & Steel Co. v. Davis, 111 Pa. 597.

It is submitted that there was no ground for the submission to the jury of the question whether Flynn was or was not a superior officer, principal or vice principal: McGinley v. Levering, 152 Pa. 366.

*William Drayton,* for appellee.—The testimony is sufficient to show that Flynn was much more than a mere employee:

Railroad v. Trainor, 137 Pa. 148; Mullan v. Steamship Co., 78 Pa. 25; Lewis v. Seifert, 116 Pa. 628; Evilhock v. R. R., 169 Pa. 592.

The cases cited by appellant are all cases where the boss or foreman was working with the plaintiff under a common head, or else where the boss has supplied proper materials and the workmen make use of improper ones, as in Ross v. Walker, 139 Pa. 49; Prescott v. Ball Engine Co., 176 Pa. 459, or where the workman is bound to accept the known risks of his employment as in Bradbury v. Coal Co., 157 Pa. 231.

OPINION BY MR. JUSTICE MITCHELL, May 2, 1898:

A vice principal for whose negligence an employer will be liable to other employees must be either, first, one in whom the employer has placed the entire charge of the business, or of a distinct branch of it, giving him not mere authority to superintend certain work or certain workmen but control of the business, and exercising no discretion or oversight of his own: N. Y., L. E. & W. R. R. Co. v. Bell, 112 Pa. 400; or secondly, one to whom he delegates a duty of his own which is a direct, personal, and absolute obligation, from which nothing but performance can relieve him: Lewis v. Seifert, 116 Pa. 628; Ross v. Walker, 139 Pa. 42; Prescott v. Ball Engine Co., 176 Pa. 459.

In the present case the uniform testimony was that the fall of the pipes that injured the plaintiff was caused by the manner of removing the ice from them, and the judge submitted to the jury to find whether the manner was adopted by the workman who did it, on his own judgment, or whether he did it "by direction of some of the officers of the company higher in authority." The only person to whom the evidence pointed as having given the order was Flynn, and he does not come within either branch of the definition of a vice principal. The evidence is practically undisputed that the president of the company visited the factory several times a week and exercised a general supervision over its operation. Next to him in authority was Harper, the general manager who hired the men, including plaintiff, and "had entire charge of the business inside and out" as one of plaintiff's witnesses expressed it. Flynn was the chief engineer, and had general charge of the engine room and the freezing department, of which he was the foreman or

boss. In that capacity he gave orders to the men in that department, and as the manager, Harper, testifies, had authority to engage men for short jobs in the manager's absence. This is the whole substance of the testimony, and it does not in any view amount to more than that Flynn was the foreman of that room or department. A foreman is ordinarily a fellow-workman: McGinley v. Levering, 152 Pa. 366.

So far we have considered only the plaintiff's evidence. If however we look at the defendant's we find that Ballingall, the president, gave the order to Flynn, not only to have the ice removed from the pipes, but to do it by shutting down the brine pumps and letting the pipes become sufficiently warm to allow the ice to be removed easily. If Flynn disregarded this order and directed it to be done in a different way, the defendant would not be liable in any event. Where the employer himself assumes control and gives an express order not only what to do but how to do it, even a vice principal is bound to obey, and becomes for the time being a mere coemployee, whatever his general authority under other circumstances. And the employer is not bound to personally supervise the doing of the work. He is entitled to assume that his orders will be carried out.

The evidence, therefore, whether we look at that on the part of the plaintiff, or at the whole, fails to show anything that justifies the submission to the jury of the question whether Corner, the workman who caused the accident, was acting under the orders of the defendant company or any of its officers, and as Corner himself was admittedly a coemployee, the verdict should have been directed for the defendant.

Judgment reversed.