# Mapes *v.* Pittsburg Provision & Packing Company, Appellant.

*Negligence—Master and servant—Vice principal—Definition.*

A vice principal for whose negligence an employer will be liable to other employees must be either, first, one in whom the employer has placed the entire charge of the business, or of a distinct branch of it, giving him not mere authority to superintend certain work of certain workmen, but control of the business, and exercising no discretion or oversight of his own; or secondly, one to whom he delegates a duty of his own which is a direct personal and absolute obligation, from which nothing but performance can relieve him.

Any person who so far represents the master as to exercise his authority in directing the places where the employees shall work, whether he be called the superintendent, foreman, or agent, will become in that respect and as to the performance of that obligation of the master, a vice principal.

In an action to recover damages for personal injuries it appeared that the plaintiff was directly ordered to work in a place, which, under the conditions usually prevailing, would have been regarded as a reasonably safe one, but which by virtue of another direct order from another person employed by defendant, had been suddenly converted into a place of great risk and danger.   The evidence showed that the person who gave the order was in general charge of the men, hiring and discharging them at pleasure, and that he was known as the foreman.   There was also evidence that he was superintendent under the architect.   *Held,* that the question whether such person was a fellow servant of the plaintiff, or a vice principal of the defendant, was for the jury.

*Appeals—Assignments of error—Extract of charge.*

An extract from the charge alleged to be error is not a proper basis for an assignment of error, where the extract taken in connection with the context, and the charge in general, was a proper instruction.

Argued April 11, 1906.   Appeal, No. 93, April T., 1906, by defendant, from judgment of C. P. No. 3, Allegheny Co., May T., 1904, No. 730, on verdict for plaintiff in case of Harry P. Mapes v. The Pittsburg Provision & Packing Company.

Before RICE, P. J., PORTER, HENDERSON, MORRISON and HEAD, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before EVANS, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows :

The next question is, did this accident happen because of the ordinary fatalities which occur in the erection of a building, or on account of the negligence of somebody? There is evidence on both sides of that question. The negligence claimed here by the plaintiff is this : [That the ordinary and careful way to have hoisted this beam and put it in place, would have been to have kept it supported by the block and tackle until the beam was fairly settled and secured in its place, and that through the orders of Weston that support was taken away without the knowledge of the plaintiff; and that because of the taking away of that support it was a negligent act on his part, and this accident occurred.] [5] The evidence is somewhat conflicting upon that question as to whether the support was taken away or not, and whether the support was reasonably necessary to have sustained this beam. Those are the two questions which will determine whether the plaintiff is entitled to a verdict at all in this case. [If you find there was negligence on the part of someone, in ordering the support of this block and tackle to be taken away, and that the person who ordered that was a vice principal (I have instructed you what a vice principal is), then your verdict should be for the plaintiff.] [6]

Verdict and judgment for plaintiff for $500. Defendant appealed.

*Errors assigned* were (1–3) in submitting the case to the jury ; (5, 6) above instructions, quoting them.

*Joseph Howley*, with him *W. A. Hudson*, for appellant.—Every workman takes the risk of his employment, and if the danger increases in the progress of the work, that is a risk of the employment: Sykes v. Parker, 99 Pa. 465; Allexander v. Penna. Water Co., 201 Pa. 252; Price v. Lehigh Valley

Railroad Co., 202 Pa. 176; Reese v. Clark, 146 Pa. 465; Wojciechowski v. Spreckles' Sugar Refining Co., 177 Pa. 57.

There is no negligence on the part of the defendant shown. This case comes clearly within the principle settled in many cases, that one who is erecting a building or other structure is not liable for accidents happening in the course of the erection, if he exercises ordinary care in selecting competent persons to do the work: Walton v. Bryn Mawr Hotel Co., 160 Pa. 3; Nuss v. Rafsnyder, 178 Pa. 397; Bemisch v. Roberts, 143 Pa. 1; Durst v. Carnegie Steel Co., 173 Pa. 162; Meyers v. Moorehead Bros. & Co., 28 Pa. Superior Ct. 503; Meixner v. Phila. Brewing Co., 210 Pa. 597.

*Meredith R. Marshall*, with him *Thos. M. & Rody P. Marshall*, for appellee, cited: Schiglizzo v. Dunn, 211 Pa. 253; Geist v. Rapp, 206 Pa. 411; Butterman v. McClintic-Marshall Const. Co., 206 Pa. 82.

OPINION BY HEAD, J., October 5, 1906:

The first, second and third assignments of error may be considered and disposed of together, as they present but a single question, viz: Was the court below justified, under all the evidence, in submitting the case to the jury and refusing to give binding instructions in favor of the defendant?

The defendant was engaged in making alterations and repairs in and about its buildings. To carry out the plans therefor, which had been prepared by an architect, it became necessary to raise and secure in place, about fifteen feet above the floor, a number of long, heavy wooden beams. When properly in place each end of a beam would securely rest in an iron hanger and these hangers were attached to girders so that the weight of the beams would be supported. The plaintiff was a carpenter employed, with many other men, by the defendant and engaged in doing the work referred to, under the direction of one Weston, the extent of whose authority and the nature of whose relations to plaintiff and defendant are important questions to be considered.

The testimony offered by the plaintiff tended plainly to prove that the method of handling these beams always used, with the single exception of the instance when the accident

occurred, not only in this building, but in others where like work was being done, was to hoist them by the use of derricks and falls, which would carry the weight and hold and control the beam until its ends were securely lodged in the hangers. The derricks and falls were operated by gangs of men on the floor below, who were also under the immediate orders of Weston. When one of the beams had been raised to about the required place it was found that "it was a little too long and fit too tight," and, under the direct orders of Weston, four men, the plaintiff, Madden and two others, stepped out on the beam to sledge it into place. The plaintiff testifies that when he went out on the beam to execute this order he did not know that the support of the pulleys had been withdrawn, but supposed they still held it in accordance with the usual method. The force of a blow from the sledge, the weight of the men and of the beam itself, overcame the resistance caused by its wedging and it fell to the floor, the plaintiff falling with it and receiving the injuries of which he now complains. Alfred Madden testified that when Weston gave the order he went out on the beam along with the plaintiff to help sledge it into place, but says he heard Weston order the men below to loosen the falls, and, knowing the place he occupied would then become dangerous, he stepped off the beam just in time to save himself. Although he endeavored to warn the man beside him, the time was so short his warning was fruitless and the man fell. He says that probably only five or six seconds elapsed from the time Weston ordered the men below to loosen the blocks and tackle until the beam fell. Finally he testifies that he never knew the support of the block and tackle to be withdrawn until the beam was in place, either before or after the accident, and that to have followed the method usually adopted "would have insured safety." Here, then, we have testimony from which, if credible, the jury could find that the fall of the beam and the consequent injury to the plaintiff were the direct result of the orders given by Weston. Who, then, was Weston? To what extent, if at all, was the defendant responsible for any error of judgment or want of care on his part?

A number of witnesses testified that Weston was in general charge of the men, hiring and discharging them at pleasure. The plaintiff, on this subject, gave the following testimony

(App., pages 6 and 7): " Q. You knew Mr. Comstock? A. Yes, sir. Q. He was the man that had charge of the work? general charge? A. He was the architect. Q. He was the general superintendent? A. No, sir, he wasn't. Q. Mr. Weston was the foreman? A. Mr. Weston was superintendent under Mr. Comstock. Q. But Mr. Comstock had general supervision of the work? A. He was the architect and drew the plans, and Mr. Weston executed them." Mr. Madden testified that he worked there several months and that Weston seemed to have complete charge of the work and the men, hiring, discharging and directing the latter as he chose. A. L. Loeffet testified that Weston had complete charge of the work, " but there was an architect over the job that was over him." N. E. Cole testified that Weston had complete charge of the work and directed all the men.

With the conflict in the testimony, if any, either as to the immediate cause of the accident or the extent of Weston's apparent authority, we have no concern whatever. Our duty is simply to ascertain whether or not the plaintiff offered testimony which, if believed and accepted by the jury, would warrant the verdict they have found. It may be noted here that the evidence fails to disclose, at any time in connection with this work, the presence or supervision of any executive officer of the defendant company higher in authority than Weston. It is true Mr. Comstock, the architect who drew the plans for the work, testifies that he had general charge of the construction for the company; but he was neither an officer nor agent of the defendant. This brings us naturally to the important inquiry in this case, namely, was Weston at the time the accident occurred and in relation to the situation in which the plaintiff was then placed, a vice principal for whose acts or omissions the defendant must answer, or was he but a fellow servant with the plaintiff, whose negligence would be one of the risks assumed by the latter as an incident of his employment?

It would be a uselessly burdensome task to undertake to review all of the cases in which our Supreme Court have undertaken to define a vice principal and to mark the essential characteristics which distinguish him in any given case from a fellow servant with the plaintiff. In Lewis v. Sei-

fert, 116 Pa. 628, a case fully argued by eminent counsel and carefully considered by the court, Mr. Justice PAXSON thus describes a vice principal : " But there are some duties which the master owes to the servant and from which he cannot relieve himself except by performance. Thus, the master owes to every employee the duty of providing a reasonably safe place in which to work, and reasonably safe instruments, tools and machinery with which to work. This is a direct, personal and absolute obligation ; and, while the master may delegate these duties to an agent, such agent stands in the place of his principal, and the latter is responsible for the acts of such agent. And where the master or superior places the entire charge of his business, or a distinct branch of it, in the hands of an agent or subordinate, exercising no discretion or oversight of his own, the master is held liable for the negligence of such agent or subordinate : Mullan v. Phila., etc., Steamship Company, 78 Pa. 25 ; N. Y., L. E. & W. R. R. Co. v. Bell, 112 Pa. 400."

In Prevost v. Citizens' Ice, etc., Company, 185 Pa. 617, the same court, speaking through Mr. Justice MITCHELL, says : " A vice principal for whose negligence an employer will be liable to other employees must be either, first, one in whom the employer has placed the entire charge of the business, or of a distinct branch of it, giving him not mere authority to superintend certain work or certain workmen, but control of the business, and exercising no discretion or oversight of his own : N. Y., L. E. & W. R. R. Co. v. Bell, 112 Pa. 400 ; or secondly, one to whom he delegates a duty of his own which is a direct, personal and absolute obligation, from which nothing but performance can relieve him : Lewis v. Seifert, 116 Pa. 628, etc."

Even if we were to consider only the class first mentioned in the case last cited, a strong argument could be made to show that Weston, in relation to the construction of the building of the defendant about which we are now inquiring, occupied the position of a vice principal because it is difficult to see, from the evidence, through what other channel the defendant exercised any discretion or oversight in relation to that work. If he was the only representative of the defendant, with whom the testimony brings us into contact, who appeared to be exercising

the discretion and oversight, as well as the authority, which are the attributes of the employer, why should he not be regarded as a vice principal? But when we come to a consideration of the second branch of the rule laid down in Prevost v. Citizens' Ice, etc., Company, 185 Pa. 617, which is but a restatement in other language of what had been declared to be the law in Lewis v. Seifert, we think a proper conclusion can be reached without serious difficulty. It was undoubtedly a duty imposed by law on the defendant to furnish to the plaintiff and all other servants and employees, a reasonably safe place in which to work. This was a direct, personal and absolute obligation from which there was no escape by the employer except by performance of it. Any person who so far represented the master as to exercise his authority in directing the places where the employees should work, whether he be called superintendent, foreman or agent, would become in that respect and as to the performance of that obligation of the master, a vice principal. That the testimony offered by the plaintiff plainly pointed to Weston as the person who in this respect exercised the authority of the master and to this extent represented him, we think cannot be successfully disputed. It is not claimed that the plaintiff was in any degree guilty of any contributory negligence. If, therefore, Weston, by direct order, had sent the plaintiff to work in an unsafe and dangerous place without any knowledge of such danger on the part of the plaintiff, and the latter had suffered injury thereby, could it be successfully contended that Weston was but a fellow servant of the plaintiff and that the risk of such danger was but the ordinary incident of the plaintiff's employment for which the defendant could not be held responsible? But if, as in the present case, the plaintiff was directly ordered to work in a place which, under the conditions usually prevailing, would have been regarded as a reasonably safe one, but which, by virtue of another direct order from Weston, had been suddenly converted into a place of great risk and danger, according to the testimony, upon what principle can it be argued that the responsibility of the master vanished as suddenly as the danger came? We are unable to arrive at any other conclusion, under the testimony offered by the plaintiff, than that the plaintiff was ordered to work in a dangerous place, made so by the act and order of Weston himself, and,

as a consequence, that the court was obliged to submit this question to the jury, and that there is in the testimony of the plaintiff sufficient warrant, in law and fact, for the finding that, in this respect and to this extent, Weston was a vice principal for whose act the defendant must answer. The first three assignments of error are therefore overruled.

The fourth, fifth and sixth assignments complain of the manner in which the case was submitted in the general charge. As to the fifth assignment, we regard it as sufficient to say that it is not a fair extract from the charge of the court. The court did not undertake to instruct the jury, as the extract from the charge quoted in the assignments of error would seem to indicate, " that the ordinary and careful way to have hoisted this beam and put it in place would have been to have kept it supported by the block and tackle until the beam was fairly settled and secure in its place." The beginning of the sentence from which this extract is taken clearly shows that the court was but stating the claim of the plaintiff, in that respect, and there is but little to be gained by an attempt to convict the trial court of error by the presentation to an appellate court of but a portion of a sentence taken from the entire charge.

The learned court below did not undertake in the charge to review the testimony on either side of the case. No points were presented craving special instructions as to any portion of the testimony, and in the absence of a request for such instructions upon any particular part of the testimony we do not think the trial court can be reversed for a failure to call the attention of the jury particularly to the theory of the defendant, or the testimony in support of it. We regard the charge of the court, taken as a whole, as a fair submission to the jury of the real points in controversy, and the jury having found under the submission that Weston, in ordering the plaintiff to step out upon the beam and then in further directing the men below to remove the support of the block and tackle, was acting in the capacity of vice principal, and that these orders were the proximate cause of the injury to the plaintiff, the responsibility of the defendant necessarily follows.

The assignments of error are all overruled and the judgment is affirmed.