## McGinnis *v.* Valvoline Oil Works, Appellant.

*Negligence—Master and servant—Safe place of employment—Contributory negligence.*

In an action by a night watchman against his employer to recover damages for personal injuries sustained from falling into a pit over which he was crossing on a plank twelve inches wide, no recovery can be had where it appears that the plaintiff was sixty-eight years old, weighed two hundred and fifteen pounds, had defective eyesight and used a cane on account of rheumatism; that he was generally familiar with the building and construction that was going on; that he had not been invited or directed, nor was there any necessity for his using the plank as there were other ways by which he could have gone around the pit; and that according to his own testimony he "didn't pay particular attention to it, was in a sort of hurry to get out."

Argued April 19, 1917. Appeal, No. 181, April T., 1917, by defendant, from judgment of C. P. Butler Co., June T., 1913, No. 10, on verdict for plaintiff in case of W. C. McGinnis v. Valvoline Oil Works, Limited. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Trespass to recover damages for personal injuries. Before REIBER, P. J.

388  McGINNIS *v.* VALVOLINE OIL WORKS, Appel.

From the record it appeared that plaintiff was employed as a night watchman in an oil refinery.   He was injured on the evening of Sunday, March 12, 1911, while making his way over a plank twelve inches wide lying across a concrete engine pit.   The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $961.66.   Defendant appealed.

*Error assigned,* among others, was in refusing defendant's motion for judgment n. o. v.

*J. Campbell Brandon,* with him *W. D. Brandon,* for appellant.—Plaintiff was guilty of contributory negligence:   Iams v. Hazel Atlas Glass Co., 251 Pa. 439; Schneider v. Philadelphia Quartz Co., 220 Pa. 548; Pittsburgh, Etc., R. R. v. Sentmeyer, 92 Pa. 276; Hotchkin v. Erdrich, 214 Pa. 460; Welch v. Carlucci Stone Co., 215 Pa. 34; Collins v. Second Ave. Traction Co., 7 Pa. Superior Ct. 318.

*W. H. Martin,* with him *E. H. Negley,* for appellee.— It was the duty of the defendant to provide a reasonably safe place for the plaintiff to work, a direct, personal, and absolute obligation from which nothing but performance could relieve it: Lillie v. American Car, Etc., Co., 209 Pa. 161; Mapes v. Pittsburgh Prov. Co., 31 Pa. Superior Ct. 453; Schiglizzo v. Dunn, 211 Pa. 253; Casey v. Penna. Asphalt Paving Co., 198 Pa. 348.

The plaintiff was under no obligation to examine and inspect places in which he was required to work in order to discover defects not open to ordinary observation: O'Brien v. Sullivan, 195 Pa. 474; Penna. Railroad Co. v. Zink, 126 Pa. 288; Ortlip v. Philadelphia, Etc., Traction Co., 9 Pa. Dist. Rep. 291; Doyle v. Pittsburgh Waist Co., 204 Pa. 618; Johnson v. Bruner, 61 Pa. 58.

OPINION BY ORLADY, P. J., July 13, 1917:

The plaintiff was employed at the defendant's oil re-
fining works as a night watchman. A new building, ad-
jacent to the old one, was about completed and ready for
occupancy. The scaffolding in the new building was
being removed and the general debris was laying around
and in the new pump house. Within the new building
was constructed a pit fourteen feet wide, eight or nine
feet deep, of brick with a concrete bottom. During the
building operation, a plank foot- or barrowway was
placed over the pit opening for use by the workmen, and
the day before the accident happened one or more of the
planks were removed, so as to leave a single plank six-
teen feet long, twelve inches wide, extending from one
wall of the pit to the opposite side, and supported by a
post in the centre, with the overlapping end of the plank
resting on the walls of the pit. Inside and around the
building the material used in the construction was loose-
ly piled. The plaintiff's duties as night watchman were
"to keep a general lookout over the entire plant; to see
that the men were where they belonged, and to keep a
general supervision." His regular station was in the
old pump house adjoining the new building, and he was
necessarily familiar with the general surroundings of the
old and new constructions, as he had been in the employ
of the defendant for about two years. The plaintiff was
68 years old, weighed 215 pounds, had defective eyesight,
on account of which he wore glasses, and by reason of
being crippled with rheumatism used a cane to sustain
him. The work was suspended on Saturday afternoon,
and no work was pressed the following day. The acci-
dent happened on Sunday evening. The plaintiff testi-
fied that he had never used this plank, and knew there
was an outside entrance to the new building which would
give him access to its interior. His narration of the ac-
cident is as follows: "Q.—What time did you go to
work? A.—I went to work at six o'clock; this evening
I went in I looked across the new pit over where the new

gas engine was sitting and there was something there. Q.—Was there a new gas engine already set in the new pump house? A.—Yes, sir, over on the other side, and there was something at this end of the engine next the creek; I can't tell you what it was; I don't know whether it was living or dead or what it was, but I thought I had better see what it was before I went out and this walk was there across. Q.—What walk? A.—There was a plank; I think a twelve-inch walk; I thinks I would go over and see what this is before I go through the works; I started to go over and when I got about half way and I stepped down, it seems there was a brace in the middle, and when I stepped on the other side the plank went down a little and the end, the way I was going, and I seen the dust raising and just as that it sort of gave a little and I took another step in the way I was going and just as that the thing ran off this way, the way I came, and I dropped down. Q.—How long was that plank across there? A.—I couldn't tell you; I didn't pay much attention; thinks I, I will walk ahead to get over and didn't pay particular attention to it; I was in a sort of hurry to get out; it was pretty near dark, so I don't know; I judge it might have stuck over each side about a foot; it looked safe enough when I looked at it and thinks I, it is all right."

The plaintiff bases his claim on the allegation that the defendant did not furnish and provide a safe and secure place for him to attend to his regular assigned duties, and that this insecure and unsafe planking was such an appliance as in the ordinary and proper course of his business he had a right to expect to be safe in all particulars.

There can be no dispute as to the duties of the defendant to provide a reasonably safe place for a workman to work, and that this is a direct, personal and absolute obligation from which nothing but performance can relieve them: Lillie v. American Car & Foundry Co., 209

Pa. 161; Mapes v. Pittsburgh Provision Co., 31 Pa. Superior Ct. 453.

The plaintiff knew by personal observation that in and around the building was considerable rubbish and waste materials, and was reasonably expected to be familiar with this irregular and uncertain covering of the floor and pit. He had not been specially cautioned as to the use of this plank footway across the pit, but knew, as watchman of the plant, that it was partially dismantled and of its general construction. He also knew there were two other safe ways to get to the point he intended to reach in making the investigation of the object which attracted his attention. While the lights were lighted in the old building, there were none in the building in which the pit was located.

Taking the plaintiff's testimony in its most favorable light, we have as admitted facts, that he had never been invited or directed to use this plank, nor was there any necessity for his use of it; that in using it he "didn't pay particular attention to it; I was in a sort of hurry to get out." In view of his age, his physical affliction, his defective vision and his weight, he should have exercised greater care under the circumstances. His attempt to walk for the first time, on a single plank in a dimly lighted room, over a pit that he could not observe, was not reasonable care, but a reckless disregard of ordinary precaution. It was such a manifest neglect of prudence that an employer should not be held liable for such recklessness. He was not acting under orders, but of his own volition. He elected to adopt this specially hazardous walk.

The facts being admitted, the court should have affirmed the defendant's ninth point, "Under all the evidence in this case, the verdict of the jury should be for the defendant" and subsequently, the motion for judgment non obstante veredicto should have been made absolute.

The judgment is reversed.