2016 PA Super 16

| | |
|---|---|
| SHAYE-ASHLEY KENNEDY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROBERT MORRIS UNIVERSITY | |
| v. | |
| UNIVERSAL CHEERLEADER ASSOCIATION, | |
| Appellee | No. 1844 WDA 2014 |

Appeal from the Judgment Entered October 28, 2014
In the Court of Common Pleas of Allegheny  County
Civil Division at No(s): GD-014305

| | |
|---|---|
| SHAYE-ASHLEY KENNEDY, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROBERT MORRIS UNIVERSITY | |
| v. | |
| UNIVERSAL CHEERLEADER ASSOCIATION, | |
| Appellee | No. 1845 WDA 2014 |

Appeal from the Judgment Entered October 28, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-014305

BEFORE:  BOWES, OLSON, AND STABILE, JJ.

OPINION BY BOWES, J.:                                    **FILED JANUARY 29, 2016**

Shaye-Ashley Kennedy appeals from the trial court's grant of summary judgment in favor of Robert Morris University ("RMU" or "University") and Universal Cheerleader Association ("UCA"). After thorough review, we affirm.

The certified record reveals the following facts. Ms. Kennedy, an incoming freshman student at RMU in 2010, was selected as a member of the University's cheerleading squad coached by Cynthia Hadfield. Prior to school, she attended a pre-camp for RMU cheerleaders run by Coach Hadfield. The RMU cheerleaders, including Ms. Kennedy, then attended a mandatory camp at the University of Scranton conducted by UCA.

On August 12, 2010, while at the UCA camp, Ms. Kennedy and three other cheerleaders were practicing a new stunt called a rewind. Three individuals at the base were to propel her upward, Ms. Kennedy would perform a tuck in the air, and the bases would catch her in a sponge position. The UCA instructors demonstrated the stunt one or two times, breaking it down into steps. Kennedy Deposition, 12/18/13, at 95. On the first attempt, the bases caught Ms. Kennedy but Ms. Kennedy did not fully complete the stunt. *Id*. at 100. Ms. Kennedy was not sure whether her RMU coach was present for that attempt but she did not expect her to be there observing her group. *Id*. at 103, 104. Prior to the next attempt, Ms. Kennedy asked for more spotters in addition to the UCA instructor, and UCA

brought in two RMU cheerleaders to spot. This time, Ms. Kennedy landed on top of her bases. While they caught her body, the back of her head hit the floor. She sustained a closed head injury, concussion, cervical strain and sprain, impaired vision in her right eye, and injuries to her jaw and neck.

Ms. Kennedy commenced a negligence action against RMU and UCA by filing a praecipe for writ of summons on August 10, 2012. Service of the writ was made upon RMU on August 28, 2012; service was not effected upon UCA. On September 21, 2012, RMU ruled Ms. Kennedy to file a complaint. Ms. Kennedy's complaint, which was filed on December 31, 2012, contained no factual allegations against UCA and stated therein that Ms. Kennedy did not intend to proceed against UCA.

In her complaint, Ms. Kennedy alleged that RMU, acting through Ms. Hadfield, was negligent in several respects. Ms. Hadfield knew or should have known that the new trick was dangerous especially for persons who had little experience as a team and particularly for Ms. Kennedy, the "flyer." She averred that there should have been a spotter in the front and the ground members of the squad should have been taught how to break the fall of the flyer. She alleged that the other members of the group made no attempt to catch her or cushion her fall.

RMU filed an answer in which it denied that the activities at the University of Scranton were solely under the direction of Coach Hadfield and maintained that the accident occurred while the instruction and training was

under the supervision and control of UCA. Furthermore, UCA instructors had instructed the team in the proper way to perform the stunt and the accident did not occur on the first attempt. Moreover, the group did attempt to break Ms. Kennedy's fall. Finally, RMU filed a cross-claim against UCA, in which it alleged that the accident occurred while Ms. Kennedy was participating in activities directed, controlled, and supervised by UCA and its certified cheerleading instructions, not under the direction of RMU or Coach Hadfield. To the extent that the instruction, safety standards, or supervision were determined to be inadequate, UCA was liable to Ms. Kennedy and/or liable to RMU for contribution or indemnity.

In its answer and new matter to RMU's cross-claims, UCA admitted that the accident occurred while Ms. Kennedy was participating in a UCA training program and that UCA determined which stunts would be taught. UCA also denied that it was negligent and filed preliminary objections in the nature of a demurrer to Ms. Kennedy's complaint. In support of the demurrer, UCA pointed to Ms. Kennedy's admission that she was not "presently pursuing any claims against [UCA]" and the absence of any facts pled that could support liability against UCA. Additionally, UCA maintained that the action against it was barred by the two-year statute of limitations, and thus Ms. Kennedy was precluded from amending the complaint to assert a cause of action against UCA. Pursuant to a stipulation of the parties, UCA was dismissed as a primary defendant but remained in the case as an

additional defendant, and the caption was amended to reflect the parties' changed status.

On October 7, 2014, RMU moved for summary judgment. It alleged that there was no dispute that UCA evaluated the cheerleader participants' qualifications and skill levels, determined what stunts would be taught, and exclusively taught and supervised the stunts. RMU contended it had no duty to prevent injury to Ms. Kennedy while she was learning the stunt at a cheerleading camp supervised and controlled by certified instructors employed by UCA.[1] UCA also filed a motion for summary judgment in which it asserted that UCA, not RMU, took responsibility for minimizing the inherent risks associated with performing advanced cheerleading stunts. Since RMU was entitled to summary judgment, UCA maintained that it was entitled to summary judgment on RMU's cross-claims.

On October 7, 2014, the court granted summary judgment in favor of RMU and UCA. Judgment was subsequently entered on October 28, 2014. On November 6, 2014, Ms. Kennedy appealed and the trial court issued an opinion on November 19, 2014. Ms. Kennedy presents three issues for our review:

> I.  Whether the trial judge's decision granting RMU's motion for summary judgment on the basis that RMU owed no duty to Appellant, was proper, when Appellant, a student

---

[1] Plaintiff did not allege that RMU negligently selected the UCA camp.

at RMU and a member of the RMU cheerleading team was participating in a mandatory training camp arranged solely by RMU with Universal Cheerleaders Associates. Further, RMU controlled pre-camp instruction and training, selected students for membership in particular groups and enrolled those groups in different classes at the camp.

II.   Whether RMU could delegate its duties it owed to Appellant to a third party, namely UCA and thus excuse RMU from liability to Appellant when Appellant was allegedly injured because of unsafe training practices.

III.   Whether the trial court's grant of summary judgment to UCA was proper when the basis of same was that the court held that RMU owed no duty to the Appellant and RMU had filed a complaint over against UCA.

Appellant's brief at 4.

In reviewing the grant of summary judgment, the following principles apply.

[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt. On appellate review, then, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is de novo. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

*Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (internal quotations and citations omitted).

Ms. Kennedy concedes that there is virtually no dispute as to the facts relevant to the issue of whether RMU owed a duty under the circumstances herein. Appellant's brief at 8. Ms. Kennedy also agrees that the trial court properly looked to the five factors identified in *Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000), in determining whether RMU owed a duty of care. Those factors include:

1. The relationship between the parties;

2. The social utility of the actor's conduct;

3. The nature of the risk imposed and foreseeability of the harm incurred;

4. The consequences of imposing a duty upon the actor; and

5. The overall public interest in the proposed solution.

*Sellers v. Twp. of Abington*, 106 A.3d 679, 682 (Pa. 2014) (*quoting Lindstrom v. City of Corry*, 763 A.2d 394, 397 (Pa. 2000)). Whether a duty of care is owed to a particular individual is a matter for the court to decide. *Sellers*, *supra* at 682.

Ms. Kennedy takes issue with the court's reasoning and conclusions. She directs our attention to the Court of Appeals for the Third Circuit's decision in *Kleinknecht v. Gettysburg College*, 989 F.2d 1360 (3d Cir. 1993), which she maintains is factually on point and persuasive. In that

case, a Gettysburg College lacrosse player died from cardiac arrest during an off-season practice at the school. The plaintiff contended that the college had a duty based on its special relationship with its student athletes to have properly trained emergency medical personnel and services available at its sporting events. The trial court disagreed, holding that the college had no duty to anticipate and guard against a fatal arrhythmia in a young and healthy athlete. Thus, the college was not negligent for failing to provide CPR trained coaches and trainers at the practice or otherwise have in place measures to deal immediately with the medical emergency. The court of appeals reversed. It reasoned that, since it was foreseeable that a lacrosse player could suffer serious injury during an athletic event, the Supreme Court of Pennsylvania would find that the college had a duty to provide an appropriate and timely response to a medical emergency during the sporting event.

Ms. Kennedy alleges that there is a special relationship between herself and RMU due to her participation in the University's cheerleading program. The training camp was arranged by RMU and her attendance was mandatory. She argues that she was injured while performing a stunt with a group that had been assembled in pre-camp practice by Coach Hadfield and that the coach was present when the injury occurred. In terms of social utility, Ms. Kennedy contends that the cheerleading program is for RMU's benefit. She maintains the risk to her and other cheerleaders was obvious.

Finally, Ms. Kennedy suggests that if she had been injured on RMU's premises, there would be clear imposition of a duty. She contends that the fact she was injured elsewhere at a camp arranged by her coach and while her coach was just a few feet away should not warrant a different result.

RMU concedes that although it owed a duty to Ms. Kennedy to use due care in the selection of a cheerleading camp, Ms. Kennedy did not allege negligence in the selection of the UCA camp or that UCA's instructors were unqualified. However, RMU contends that it had no duty with respect to UCA's instruction generally or its instruction of the stunt at issue. RMU points to the trial court's analysis of the five factors for determining whether there is a duty in a given situation and concurs in the court's reasoning for finding no duty. RMU also argues that **Kleinknecht** is inapposite. Therein, the plaintiff specifically alleged that the college breached its duty to provide emergency medical services during a sporting event **on its premises** and conducted under its auspices. In contrast, RMU contends that Ms. Kennedy failed to identify any duty that RMU breached or any action or omission on RMU's part that caused or contributed to her injury.

The trial court found that Ms. Kennedy was following the instructions of UCA, not RMU, at the time of her injury. It based that finding on Ms. Kennedy's own testimony that the camp was operated entirely by UCA and that Ms. Kennedy did not expect supervision by her own coach. It applied the factors and determined that the relevant conduct for purposes of

analyzing the social utility factor was not college cheerleading *per se*, but RMU's decision to attend the UCA camp. It concluded that the cheerleading instruction inured to the benefit of Ms. Kennedy as well as RMU. The trial court found the third factor moot because the risk of harm of performing stunts fell upon UCA, who was charged with supervision and training. The court also found the fact that Coach Hadfield arranged for attendance at the camp and accompanied the cheerleaders did not support imposition of a duty upon RMU. "Evaluation of the cheerleaders, assignment of specific cheerleaders to specific groups and positions, identification of stunts to be performed, and any and all instruction or safety precautions were directed by UCA staff and instructors." Trial Court Opinion, 11/19/14, at 2. Finally, the public interest in imposing liability would not be served by imposing a duty on RMU for UCA's conduct.

The record supports the trial court's finding that Ms. Kennedy identified no duty that RMU breached *vis-à-vis* stunt instruction and supervision at the UCA camp. There was no evidence that Coach Hadfield undertook to instruct or train Ms. Kennedy or other members of her squad in the performance of the stunt that resulted in injury. According to Ms. Kennedy, Coach Hadfield was merely observing the four to six RMU stunt groups.

The Vice President of UCA and the head instructor of the camp, Charles W. Ahern, confirmed that UCA provides all instruction and

supervision and that college coaches are not expected or required to participate. Specifically, their own instructors are in charge of teaching a stunt such as a rewind. Ahern Deposition, 4/4/14, at 42. He acknowledged that there is a risk inherent in performing an aerial stunt like the rewind. However, UCA, not the participating universities, was responsible for trying to minimize the risk and run the classes safely for the participants. *Id*. at 59, 60. Mr. Ahern confirmed that Cindy Hadfield was not an instructor at the camp and he had no expectation that she would be participating in the teaching of the rewind stunt. *Id*. at 62.

We find **Kleinknecht**, **supra**, distinguishable. Potential liability therein was premised on the college's duty to have adequate medical response personnel available on site during the school-sponsored lacrosse practice. The issue was not whether the college was in sole control of the practice, but whether it was foreseeable that a medical emergency could arise. It mattered not that the plaintiff sustained an unforeseeable cardiac arrhythmia rather than a contact-related lacrosse injury. As the court recognized, "the type of foreseeability that determines a duty of care, as opposed to proximate cause, is not dependent on the foreseeability of a specific event." **Kleinknecht**, **supra** at 1369 (*citing* **Moran v. Valley Forge Drive-in Theater, Inc.**, 246 A.2d 875, 878 (Pa. 1968)). Foreseeability means the likelihood of a general type of risk rather than the

precise chain of events that culminated in the injury. *Id*. citing **R.W. v. Manzek**, 888 A.2d 740 (Pa. 2005).

The instant case turns on whether RMU owed a duty to prevent injury to Ms. Kennedy while she and her stunt group were under the supervision and control of UCA instructors. There is no allegation that RMU negligently selected the UCA camp or that UCA was negligent in its instruction or operation. All parties concede that UCA controlled the schedule and classes and supervised the cheerleaders. Ms. Kennedy admitted that, "Sometimes [Coach Hadfield] was present, sometimes she wasn't." Kennedy Deposition, 12/18/13, at 88. Ms. Kennedy was in a four-member group with a member who was not an RMU student. Although Ms. Kennedy pled that Coach Hadfield assembled the stunt teams and selected the classes, those allegations were not supported by the record. UCA instructors placed them in stunting groups based on skill level. Although Coach Hadfield chose certain classes for RMU cheerleaders, inclusion in the class was conditioned on individual qualification by UCA instructors. Hadfield Deposition, 8/28/14, at 89. Ms. Kennedy stated that she believed she had the skills required for the rewind stunt.

In short, we agree with RMU that Ms. Kennedy failed to identify any duty on the part of RMU that was breached when she sustained her unfortunate injury. There was no allegation that Coach Hadfield or RMU negligently selected or entrusted its cheerleaders to UCA. Coach Hadfield

- 12 -

maintained that, "I made the decision to go with UCA because I believe they run the best collegiate camps in the nation." *Id*. at 88. The record establishes that UCA, not RMU, operated the camp and directed and supervised instruction. UCA instructors were in charge of Ms. Kennedy's group at the time of the accident.

Ms. Kennedy contends that RMU's duty of care was non-delegable to UCA. In support of that proposition, she cites a number of cases where our courts held that a principal cannot escape liability for harm to its employee by delegating its duties to a third party.[2] *See e.g.*, *Prevost v. Citizen's Ice & Refrigeration Co.*, 40 A. 88 (Pa. 1898); *Smith v. Hillside Coal & Iron, Co.*, 40 A. 287 (Pa. 1898); *Lewis v. Seifert*, 11 A. 514 (Pa. 1887). She baldly asserts, without more, that the relationship herein is similar to an employment relationship.

---

[2] Pennsylvania does recognize non-delegable duties in limited circumstances. In *Thompson v. Nason Hosp.*, 591 A.2d 703 (Pa. 1991), our Supreme Court held that, under the doctrine of corporate negligence, a hospital has a non-delegable duty to its patient to ensure the patient's safety and well-being while in the hospital. In *Webb v. Zern*, 220 A.2d 853 (Pa. 1966), Pennsylvania recognized the Restatement (Second) of Torts § 402A(1), which imposed a non-delegable duty upon the seller of a product to make and/or market the product free from "a defective condition unreasonably dangerous to the consumer or [the consumer's] property." Restatement (Second) of Torts § 402A(1); *Tincher v. Omega Flex*, 104 A.3d 328 (Pa. 2014).

RMU counters first that Ms. Kennedy's assertion that it delegated a non-delegable duty to UCA is waived due to a failure to develop this argument in the trial court. Absent waiver, RMU argues that it lacks merit because Ms. Kennedy again fails to identify the "non-delegable duty" RMU purportedly delegated. Furthermore, RMU maintains that the three cases from the late 1800s upon which Ms. Kennedy relies are inapplicable as they involve the alleged negligence of an employer and a company's liability for the negligence of its agents. Since Ms. Kennedy failed to allege or offer proof that UCA's instruction and supervision was negligent, RMU argues that even if RMU delegated a non-delegable duty, there was no act of negligence on UCA's part for which RMU could be held liable. RMU characterizes Ms. Kennedy as trying to impose strict liability "simply because she was injured while a member of the school's cheerleading squad." Appellee's brief at 14.

We find that Ms. Kennedy's claim of a non-delegable duty, although not fully developed below, was advanced in the trial court. Nonetheless, the argument misses the mark. This is not an employment situation and Ms. Kennedy fails to articulate any rationale for treating it like one. Furthermore, as the dissent aptly noted in *Leonard v. Commonwealth*, 771 A.2d 1238, 1243 n.1 (Pa. 2001) (Dissent, Nigro, J.), the term "non-delegable duty" in the employment situation is somewhat of a misnomer. An employer may delegate "non-delegable duties" to another, but the employer remains liable if the person to whom the performance is delegated

acts negligently.  *Id*. (citing Restatement (Second) of Agency §§ 214, 492-520 (1958);  ***General Building Contractors Assoc., Inc. v. Pennsylvania***, 458 U.S. 375, 395-96 (1982)).  Since Ms. Kennedy did not assert any allegations of negligence against UCA, this rationale for imposing liability is wholly inapposite.

Furthermore, it appears that RMU engaged UCA as an independent contractor.  RMU contracted with UCA for the instruction and supervision of its cheerleaders at UCA's camp.  The camp was conducted at the University of Scranton and there is no evidence that RMU retained any control over the manner of instruction or supervision of stunts.  Thus, RMU would not be subject to vicarious liability for the negligence of UCA, even if Ms. Kennedy had alleged that UCA was negligent.

Finally, Ms. Kennedy contends that the grant of summary judgment in favor of UCA was also improper.  In support thereof, however, she advances no rationale and cites no legal authority.  We find no merit in her contention.  UCA, although a named defendant, was not served with the writ of summons filed on August 10, 2012.  In her complaint filed on December 31, 2012, Ms. Kennedy averred that she was not pursuing any claims against UCA.  Counsel for UCA accepted service of the complaint and RMU's answer, new matter, and cross-claim on February 21, 2013.  UCA filed preliminary objections in the nature of a demurrer to Ms. Kennedy's complaint alleging that Ms. Kennedy had not pled any claims against it and any potential claims

that could be asserted were barred by the two-year statute of limitations. The parties stipulated to discontinue Ms. Kennedy's direct claims against UCA, but keep UCA in the case as an additional defendant for purposes of RMU's third-party claims. The trial court, by order of May 24, 2013, granted UCA's motion to discontinue as to less than all defendants, dismissed UCA as a defendant, and amended the caption to reflect UCA as an additional defendant subject only to liability to RMU. Once RMU was granted summary judgment, no basis for potential liability remained against UCA as UCA could not be liable to Ms. Kennedy directly and summary judgment was proper.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/29/2016