Martin Julius v. The Pittsburg, Allegheny & Manchester Traction Company, Appellant.

184
27 SC 1604
19

*Negligence—Damages—Settlement—Release.*

In an action against a street railway company to recover damages for personal injuries, the defendant offered in evidence a settlement and release alleged to have been executed by the plaintiff by his mark. Three witnesses for the defendant testified that they were present and saw the plaintiff make his mark, and that he was mentally competent to make the release and settlement. Six witnesses for the plaintiff, including his two attending physicians, testified that plaintiff, at the time the mark was alleged to have been made by him, was mentally and physically incapable of the transaction described by defendant's witnesses. *Held*, that the question of the validity of the settlement was for the jury.

*Negligence—Passenger railway—Collision with wagon.*

In an action against a street passenger railway company to recover damages for personal injuries, the case is for the jury where there is evidence for the plaintiff, although contradicted, that the plaintiff at the time of the accident was driving a wagon on defendant's east bound track; that to avoid another wagon coming in from a side street he turned into the west bound track at a time when an approaching car on that track had stopped, and that, before his wagon had cleared the west bound track, the car was started at a high rate of speed, and it ran into his wagon.

Argued Oct. 25, 1897. Appeal, No. 6, Oct. T., 1897, by defendant, from judgment of C. P. No. 3, Allegheny Co., May T., 1895, No. 557, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. GREEN, WILLIAMS and DEAN, JJ. dissent.

Trespass for personal injuries. Before PORTER, J.

At the trial, it appeared that on November 28, 1894, about noon, plaintiff was driving a wagon on East Ohio street, in the city of Allegheny, on defendant's east bound track. Charles Maeder, a witness for plaintiff, described the accident as follows:

"I was coming out of West alley with my wagon to pull in front of the store where I worked, between Cedar avenue and West alley, and he [Julius] was coming towards me, and he pulled out in front of me, to let me get in front of the store, and as he pulled out in front of me, the car stopped at the cor-

ner of James street, and before he could get into the alley the car struck."

Maeder further testified that the distance from the point where the accident occurred to James street was about one hundred feet; that the car had come to a full stop, and that when it started it did so " at pretty good speed." There was evidence for the defendant which tended to contradict Maeder's testimony.

The facts relating to an alleged settlement and release executed by plaintiff appear by the opinion of the Supreme Court.

Defendant's points and the answers thereto among others were as follows :

1. That there is no evidence that Mr. Irwin or Mr. Wheeler, or either, at the time they negotiated a settlement with the plaintiff and paid him forty ($40.00) dollars, and took his release of all claim for damages, had any reason to believe or even suspect that the plaintiff was in any way incapacitated to make a settlement and deliver a valid release of his claim for damages. *Answer :* If you find the facts to be as testified to by Mr. Irwin and Mr. Wheeler, this point is affirmed ; but in passing upon this question of fact you must consider all the evidence in the case as to the condition of plaintiff at that time, and whether or not that condition was such that Irwin and Wheeler must have known that he was incapable of making such a settlement and delivering such a release ; that is, that he did not have the mental capacity to understand it. [1]

2. That the release given in evidence by the defendant must be regarded as a final settlement and adjustment by the plaintiff of all claim for damages, and the verdict should be for the defendant. *Answer :* Under the evidence in this case this point is refused. If you find that the plaintiff executed the release and accepted the money then the release is a bar to this action, unless you are satisfied from the evidence that the plaintiff was at the time incompetent to appreciate the character of the transaction, and his competency is presumed until the contrary is established by evidence. [2]

3. There is no evidence in the case connecting the plaintiff's present condition with any negligence on the part of the defendant causing the same, and under the evidence in the case, if the jury find the defendant negligent they must be limited in the

verdict to the damage shown to be done to the plaintiff's wagon, to wit: the destruction of the singletree. *Answer:* Refused. [3]

4. Under all the evidence in the case the verdict should be for the defendant. *Answer:* This point is refused. There are questions of fact involved upon which the jury must pass under the evidence. [4]

The court charged in part as follows:

[But if he saw the car standing still, and he then started to drive around, and the car was suddenly started, and the motorman made no effort to stop it, did not make reasonable efforts to stop it, and ran into the plaintiff as a consequence, and inflicted an injury, then the plaintiff would be entitled to recover. Or if they were standing in the position described by Maeder, and the car was at such a point that, if it were only coming at the usual rate, the plaintiff could have gotten around, and he started around, but because the car was running at a rate which he had no right to expect it to be running, he was struck, because of the extraordinary speed of the car, that would be negligence in the defendant company which would render it liable. So much in case the wagon was in the position that Maeder described it.] [5]

[The defendant has called Mr. Irwin and Mr. Wheeler to testify as to what occurred at that time. It says they went there and talked with this plaintiff, that after talking about the time he had lost, and as to what his doctor's bill was, they agreed upon $40.00, and that it paid him the money, and that he made his mark to this release. If he agreed to accept that amount at a time when he was in a condition to know what he was doing and appreciate the nature and consequence of his act that would end it. The plaintiff says that he never signed it, that he never made that mark, and that he knows nothing about such an agreement; that he never made it. It is contended on his behalf that, at the time this release was signed and this money paid, this plaintiff was not in a condition to understand such a transaction, and that his physical condition was such that he could not have made his mark. Of course, gentlemen, if he did not make the mark on this paper offered, if you are not satisfied from the evidence that he did so, the paper would practically be a forgery; it would amount to nothing.

In passing upon the question as to whether or not he executed it, you will consider all the testimony in the case.] [6]

Verdict and judgment for plaintiff for $4,000. Defendant appealed.

*Errors assigned* were (1–6) above instructions, quoting them.

*A. M. Neeper*, for appellant, cited Hauser v. R. R. Co., 147 Pa. 440; Holland v. Kindregan, 155 Pa. 156; Branson v. Kitchenman, 148 Pa. 541; Tietz v. Traction Co., 169 Pa. 516; Holden v. R. R., 169 Pa. 1; Gibson v. R. R. Co., 164 Pa. 142; Wojciechowski v. Sugar Co., 177 Pa. 57.

*L. K. Porter*, with him *Wm. Blakeley* and *S. G. Porter*, for appellee.

Opinion by Mr. Justice McCollum, January 3, 1898:

The plaintiff claims compensation for an injury which he alleges he received through the negligence of the defendant. That the defendant's car collided with the plaintiff's wagon and that one of the consequences of the collision was that the plaintiff was thrown from the wagon to the ground is undisputed. Whether the occurrence was attributable to a want of reasonable care on his part or to negligence on the part of the defendant were questions for the jury upon the evidence applicable to them. It is not contended that the evidence affecting these questions was insufficient to warrant their submission to the jury. It is true that the excerpt from the charge which is the subject of the fifth assignment is criticised by the defendant as unauthorized and partial. The criticism does not involve a denial of the sufficiency of the evidence, but it alleges a misstatement of it in the instruction. A careful examination of the evidence affecting the questions of negligence and of the instructions applicable to them has satisfied us that there is no merit in the criticisms of the excerpt referred to, when it is considered, as it should be, in connection with the other parts of the charge relating to the same subject.

The third assignment is based on the refusal of the defendant's fourth point, which is as follows: "There is no evidence connecting the plaintiff's present condition with any negligence

on the part of the defendant causing the same, and under the evidence in the case, if the jury find the defendant negligent, they must be limited in the verdict to the damages shown to be done to the plaintiff's wagon, to wit: the destruction of the single-tree." This point, in view of the defense based on the alleged settlement and release, is interesting. It shows a change in the defendant's conception of its liability to the plaintiff for the injury he received in the collision. The fourth point and the alleged settlement as testified to by the agents of the defendant present seemingly inconsistent defenses. The former denies any liability on the part of the defendant for the injury the plaintiff received by his fall from the wagon, and the latter related principally, if not entirely, to compensation for it. It was not "the destruction of the single-tree" that moved the defendant through its agents to prepare and, if possible, to obtain from the plaintiff, a release of all damages accruing to him or his property by reason of injuries received in the collision. The release which the defendant sought to obtain from the plaintiff, and the testimony in relation to it unite in showing a recognition by the former of liability to the latter for injuries to person and property. Besides the inconsistency referred to there was ample evidence compelling the refusal of the defendant's fourth point. The plaintiff's description of his fall from the wagon, and the testimony supporting it, together with the testimony of Dr. Miller and of Dr. McCord, tended strongly to show that his condition on November 29, and afterwards, was the result of his fall, the day before.

The remaining assignments may be considered together. They refer to the defense founded upon the release and to the instructions in regard to it. It seems that one evening, in December, about three weeks after the collision, Wheeler, the defendant's paymaster, and Irwin, the defendant's superintendent, with the aid of a colored man they had never seen before, found their way to the house of the plaintiff for the purpose of obtaining a settlement of his claims, arising from the occurrence of November 28, against their employer. They found him in bed and, according to their version of his condition, competent to make the settlement they sought. They testified that they paid him $40.00, and that he was satisfied with that sum; that Wheeler then signed the plaintiff's name to the release

they had prepared, that the plaintiff made his mark to it, and that Wheeler and their colored guide signed their names to it as witnesses of the execution of it. Wheeler and Irwin testified positively that they saw the plaintiff make his mark on the release at the proper place, with the pen in his right hand, and without assistance from anybody. They were the only witnesses who testified that he was mentally competent to make the settlement, or physically able to make his mark to the release without assistance. Against this testimony there is the testimony of at least six witnesses to the effect that he was mentally and physically incompetent to transact any business at, and for weeks before and after, the time it is alleged the settlement was made and the release executed. Dr. Miller visited the plaintiff frequently from November 30, to January 22, and he was asked, " What was the condition of Julius's right arm, with respect to capacity to write or to make a mark, at any time during that time ? " and his answer was, " During that time he was paralyzed, palsied, and it is beyond reason, and it was impossible, for that man to lift a pen or to use it unaided." To the question, "What as to his mental capacity about December 26 ? " Dr. Miller replied, "I would say that during that time he could neither apprehend nor comprehend the signing or making of a contract. In the first place he could not, with the hand, and in the next, he could not, with his mind." His testimony on these points was positively corroborated by the testimony of Dr. McCord and other witnesses. It is very clear from the evidence in the case that the court could not instruct the jury that the release in question was binding upon the plaintiff, and a bar to a recovery. The instructions on this branch of the defense were clear and fair, and the defendant has no cause to complain of them or of the answers to its points. As we discover no error in the instructions or rulings complained of, we overrule all the assignments.

Judgment affirmed.

MR. JUSTICE GREEN, dissenting.

I am not able to agree with the majority of the Court in the disposition of this case. I do not consider that there was any evidence of negligence of the defendant company, and therefore the case should have been withdrawn from the jury. The

release was executed by the plaintiff with a full knowledge of its contents, and this was abundantly established by the testimony of the persons who were present at its execution. The plaintiff was injured while he was attempting to cross the track in front of an approaching car and, under all the authorities, he cannot recover in such circumstances. In its most favorable aspect to the plaintiff the occurrence was a mere accident, for which the defendant is clearly not responsible. I would reverse the judgment.

WILLIAMS and DEAN, JJ., concur in the foregoing dissent.