## Maud Kane, Appellant, v. Chester Traction Company.

*Negligence—Release—Evidence—Province of court and jury—Fraud.*

In an action against a street railway company to recover damages for
personal injuries, the defendant set up a release executed by the plaintiff.
Plaintiff testified that the release had been obtained from her by false rep-
resentations made by defendant's agent to the effect that it would be futile
for her to sue the company; that the judge was a stockholder; that the
juries were corrupt, and that the company would buy all the jurors and
witnesses, and could even buy her physicians and lawyers. The defend-
ant's agent denied that such representations had been made, and the sub-
scribing witness to the release, who was a friend of the plaintiff and acted
for her, flatly contradicted her testimony. It was admitted that the judge
was not a stockholder, but plaintiff did not claim that she was induced to
sign by the misrepresentation of this fact. Plaintiff claimed that her
injuries were worse than she had anticipated when the release was signed.
*Held*, that it was proper to give binding instructions for defendant.

Where a person without fraud or misrepresentation exercised upon him
executes a release of damages for personal injuries, he cannot subse-
quently avoid the release by a claim that his injuries were more serious
than he had anticipated at the time the release was executed.

Argued Feb. 8, 1898. Appeal, No. 42, Jan. T., 1897, by
plaintiff, from judgment of C. P. Delaware Co., March T.,
1896, No. 37, on verdict for defendant. Before WILLIAMS,
McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before
CLAYTON, P. J.

The facts appear by the opinion of the Supreme Court, and
by the charge of the court below which was as follows:

This action is to recover damages for any injuries sustained
by the plaintiff by reason of the alleged negligence of the de-
fendant. It seems that there had been considerable negotiations

for a settlement. Before these negotiations this writ was issued, and served about five days before this alleged release was signed. The railway company had noticed that this lady had an attorney. Mr. MacFayden says he had no such notice of the writ being issued, and served. As a matter of professional ethics, I cannot approve of the settlement of any case over the head of the attorney. Where a respectable attorney has been employed he is the advisor of his client and, speaking from a professional point of view, I cannot approve of negotiations with the principal, at least unless the attorney had notice of it. But that is simply a question of professional ethics. The courts cannot relieve from that. When you have employed an attorney you may take upon yourself the authority either to discharge him or settle the case yourself. Now, this lady had, no doubt, an attorney at the time this settlement was made. She knew a short time after her injury what had been said to her, if it was said. She alleges and calls witnesses to prove that, as an inducement to settle, she was told that the judge was a stockholder and that the juries of Delaware county were corrupt, and that the company would buy all the jurors and witnesses, and could even buy her physicians and lawyers. She knew that, and she says her mother knew it, and her young gentleman friend who is a witness here for her says he knew it. If this is so why did they not inquire, why did they not ask their attorney if there was any truth in these allegations; if they had, the attorney would have told them that it was a lie; that there was nothing in it. If it was true, they were not bound to try it before this court and corruptible jury; but they did not do that. This alleged conversation, which she says influenced her, was running for some time, perhaps months. The great question for the court is, what was said and done at the time this paper was signed or leading up to it. The law requires that the court, where the execution of a deed is clearly proved; where the signing by the defendant is not denied, where the execution of a paper is beyond controversy, the law throws upon the court the burden of deciding whether or not the alleged fraud is sufficient. We have the question constantly arising in proceedings to set aside wills, more particularly than in any other case. It has always been held that the evidence must be reasonably convincing before the chancellor will set aside a solemnly executed

written agreement. You can reasonably see why this is so, if it is not, what is the use of putting your contract in writing. Now, this company, of course, is not to be condemned for trying to settle with the injured person; it is rather to be commended for that; but, of course, if it used any undue inducements; if it committed any fraud or made false representations, and they were such as would induce the plaintiff to sign and settle, it could not be sustained. But that undue influence must be present and acting upon the mind of the party at the time, or within a reasonable time, before the execution. Where the party who is bound by the instrument is the only witness upon the one side and the defendant is the only witness on the other side, then, of course, the paper would have to stand. But the courts always require that the subscribing witness in the eyes of the law is the person selected by both the parties to witness what they do. More weight, therefore, should be given to the testimony of the subscribing witness than to the parties. Now, the subscribing witness to this paper is Mr. McClenachan. He has been called, and he has not been materially contradicted, and if what he says is true, then this paper was executed with the full knowledge of what it meant, by the plaintiff. She was competent to enter into the contract and it must stand. Her mother was satisfied when the paper was signed. It is, therefore, my duty to say to you, under the evidence, in the judgment of the court, the evidence of fraud necessary to set aside this paper is not sufficient, and I therefore direct you that this release is an absolute bar to the plaintiff's recovery. I therefore direct a verdict for the defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*Thad. L. Vanderslice*, with him *Charles L. Smythe, Garrett E. Smedley* and *Christopher H. Murray*, for appellant.—The case was for the jury: McKibbin v. Martin, 64 Pa. 352; Ettinger v. Jones, 139 Pa. 218.

It has been repeatedly held that in the proof of fraud a wide latitude should be given: R. R. v. Hoge, 34 Pa. 214; Abbey v. Dewey, 25 Pa. 413; Douglass v. Mitchell, 35 Pa. 440; Earley's App., 90 Pa. 321.

The court should not have construed the release. Where the question is not the interpretation of a writing, but its effect as evidence of a collateral fact, it is to be submitted to the jury. An admixture of parol and written evidence carries the whole to the jury: Wharf v. Howell, 5 Bin. 502; Stoever v. Stoever, 9 S. & R. 434; McCullough v. Wainright, 14 Pa. 173; Reynolds v. Richards, 14 Pa. 205; Furniture Co. v. Warsaw Sch. D., 122 Pa. 501; Spear v. R. R., 119 Pa. 69; Gibson v. R. R., 164 Pa. 142; McGrann v. R. R., 111 Pa. 171.

*W. B. Broomall*, for appellee.—A promise to pay, unperformed in consideration of a release, is not a basis for avoidance on the ground of false representation or deceit: Com. v. Brenneman, 1 Rawle, 311.

The plaintiff herself states the reason for her dissatisfaction with signing the release to be that she became dissatisfied and regretted the execution of the release, solely and only because she thought her injuries and situation merited more money. This is not a legal ground for avoiding the release: Seeley v. Citizens' Traction Co., 179 Pa. 334.

The plaintiff, under the authority of Gibson v. R. R., 164 Pa. 142, could not deny the release and retain the money she had received, except only if she could treat the money as compensation in damages for an action of deceit. She could maintain no action of deceit except for false representations as to an existing fact. There was no representation as to an existing fact except with reference to the judge being a stockholder, and as to this, as above stated, the plaintiff does not say that she was influenced by it.

OPINION BY MR. JUSTICE MITCHELL, May 16, 1898:

The plaintiff, being met with a formal release under seal, endeavored to avoid its effect by showing that it was obtained from her by fraudulent representations made to her by the agent of defendant, and by another person professedly acting as her friend and adviser, but whom she now charges to have been in the interest of defendant. The latter charge seems to have been as unfounded as it was ungrateful, but the judge having taken the case away from the jury, we must for the present treat it as if it were true. We must look therefore to

the evidence of the alleged fraud, and as a preliminary, to the admitted facts. The plaintiff having been injured in a collision on the defendant's railway, negotiations for settlement ensued which ran over a period of several weeks, if not months, and finally ended in the payment by the defendant of an amount based on the wages the plaintiff might have earned up to that time, plus an allowance to her mother for care in nursing her, and the assumption by the defendant of the doctor's bills. Plaintiff of her own motion brought in a neighbor named McClenachan as adviser, and the testimony of all the witnesses is that the negotiations were conducted at arm's length, the plaintiff starting with a claim of $1,000 and the company with an offer of $100, the sole point of difference apparently being the amount of compensation. At the meeting at which an agreement was finally reached, there were present the plaintiff, her mother and her friend and adviser, McClenachan, on one side, and MacFayden, the company's agent, on the other. The amount to be paid was agreed upon, an order on the treasurer given, and the next day the money was drawn by the. mother on plaintiff's own indorsement of the check.

So far the facts are undisputed, but plaintiff charges that she was induced to accept the amount and execute the release by the fraudulent representations of MacFayden, the company's agent, assented to, if not actively participated in, by her supposed friend McClenachan, that if she went to law she would get nothing; that the judge was a stockholder in the traction company, and that the latter would buy up the jury, the witnesses and even her lawyers. The fact of such representations having been made was flatly denied, but for the present we must assume that the jury might have found that they were. Conceding this, the only item of the array that comes up to the requirement of an existing fact, as ground of relief by reason of fraudulent representations, is that the judge was a stockholder in the company defendant. This is admittedly without any foundation, but there is no clear testimony on the part of the plaintiff that this falsely alleged fact was the inducement to execute the release. On the contrary her own testimony shows quite plainly that whatever reluctance she had to accept the sum offered was due to her desire to get more, and her subsequent dissatisfaction arose from her belief that she ought to

have got more, and that her injuries were greater than she at that time thought. This is no ground for avoiding the settlement: Seeley v. Traction Co., 179 Pa. 334.

In view of the flimsy nature of the alleged misrepresentations, so little calculated to affect the judgment of any person of common sense, the evidence as to the specific facts alleged ought to be clear and at least fairly convincing. But it is not. The whole story is vague and indefinite, and far below the grade requisite to set aside a formal instrument whose execution is admitted. It is quite probable that defendant's agent was not over nice in his mode of urging the delays and disadvantages of a lawsuit and the small amount the plaintiff might actually receive even out of a substantial verdict. His methods may have been overzealous, but they are not shown to have amounted to fraud. If plaintiff had been a merchant selling goods and the defendant a purchaser depreciating their value in the dicker, we could not say that the latter had exceeded the license allowed him by the standard of commercial honesty, and there is no reason to hold the present parties to any stricter rule. The case is by no means so strong as R. R. Co. v. Shay, 82 Pa. 198, or Wojciechowski v. Sugar Refining Co., 177 Pa. 57.

Judgment affirmed.