## Laird, Appellant, *v.* Union Traction Company.

*Negligence—Release—Evidence—Province of court and jury.*

In an action against a street railway company to recover damages for personal injuries, where the defendant sets up a written release which the plaintiff alleges was executed by him when he was prostrated and unconscious from his injury, the court is justified in giving binding instructions for defendant, where four disinterested witnesses, including a physician, testify that the plaintiff was conscious at the time that the paper was read to him, that he comprehended its contents, accepted the money consideration and signed it, and it also appears that the plaintiff used the money weeks after with full knowledge of where it came from, and made no offer to return it before bringing suit.

Argued Jan. 20, 1904.   Appeal, No. 205, Jan. T., 1904, by plaintiff, from judgment of C. P. No. 4, Phila. Co., March T., 1902, No. 2991, on verdict for defendant in case of George Irving Laird v. Union Traction Company.   Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ.   Affirmed.

Trespass to recover damages for personal injuries. Before WILLSON, J.

The facts are stated in the opinion of the Supreme Court. Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*William G. Keir*, for appellant, cited: McCaw v. Union Traction Co., 205 Pa. 271.

*Thomas Leaming*, with him *Russell Duane*, for appellee, cited: Penna. R. R. ·Co. v. Shay, 82 Pa. 198; Rose v. West Phila. Pass Ry., 3 Sup. Ct. Dig. 59; Wojciechowski v. Spreckels' Sugar Refining Co., 177 Pa. 57; De Douglass v. Union Traction Co., 198 Pa. 430; Ogden v. Phila., etc., Traction Co., 202 Pa. 480; Gibson v. Western New York, etc., R. R. Co., 164 Pa. 142.

OPINION BY MR. JUSTICE DEAN, April 11, 1904:

The plaintiff George Irving Laird, aged twenty-five and married, fell under a street car on defendant's railway in Philadelphia on November 21, 1901, and was very seriously injured. He was immediately taken to the Pennsylvania Hospital, where the next day, I. W. Brodt, acting for the defendant company, called upon him and gave him $150, on payment of which Laird executed ·in the presence of four subscribing witnesses a formal release to the company of all claim for damages by reason of the injury, stating in the release that by reason of the speed of the car he was thrown to the ground and thereby the car passed over his foot. After his recovery and leaving the hospital he brought this suit against the company, averring, that his injury was caused by the negligence of the company. The company answered that plaintiff's injury arose from his own negligence in attempting to get on a moving car, and further offered and read in evidence the release. The learned Judge was of opinion, that the release in view of the evidence, was an effectual bar to recovery, and so instructed the jury. We now have this appeal by plaintiff, assigning for error the peremptory instruction of the court,

In support of his appeal appellant argued, 1. There was no evidence that plaintiff received the money paid by the company, 2. There was ample evidence, that at the time the release was physically executed plaintiff was prostrated and unconscious from his injury, therefore was incapable of executing a valid release and the evidence bearing on this question should have been passed upon by the jury. We will not waste words quibbling as to the actual payment of the money. It was counted out to plaintiff by the agent, then counted by plaintiff himself and put by him under his pillow; he either gave it himself to his wife the afternoon of the same day, or it was given her by one of the hospital nurses. At any rate, it is not denied that she received it and used it in the family; therefore, as an indisputable fact, $150, the consideration for the release, was received by him and with his full knowledge used for his benefit.

As to the second point of appellant's argument, that Laird did not possess mental capacity to execute a valid release, it seems to be based upon a misapprehension of the relative functions of the court and jury with reference to such an instrument. A chancellor has still some duties to perform in determining what effect it should have on an issue like the one before us; equity has precisely the same power and the same duty in a suit between an individual and a corporation, as between natural persons. While it is clear, that plaintiff suffered a grievous injury, it is by no means clear he suffered a wrong from defendant and it is, perhaps, also clear that he is needy and defendant is wealthy. This arouses sympathy. But sympathy is emotion, not equity; nor is equity a chancellor's mere notions of what is equality, on the contrary, it is a system both in England and this country, of well established law. No rule of equity is better established in this state, than that to set aside a written instrument the evidence must be " clear, precise and indubitable " whether the allegation be fraud practiced by the beneficiary under it, or incapacity on the part of him who executed it. Penna. Railroad Co. v. Shay, 82 Pa. 198, and the many cases following it. In this case incapacity is alleged ; it is argued that at the time Laird signed the release, he was in a state of unconsciousness. It is attested by four disinterested witnesses, three of whom were

called and testified at the trial. Dr. Brooks, the hospital surgeon, who was attending plaintiff, testified, that he saw him on three separate occasions on the day the release was executed and that he was "all right mentally," that he, the surgeon, gave express permission to the agent of the company to see and talk to him. Two of the nurses and Brodt of the subscribing witnesses testify, that the release was read to him, that he seemed to comprehend its contents, then accepted the money and signed it. There is not a particle of evidence of fraudulent representation or even of undue persuasion to induce him to sign. There was some slight evidence on the part of plaintiff that he was in a state of unconsciousness but nothing more. The plaintiff himself does not say he did not read or sign it, but that he does not remember doing so. How could a chancellor in the face of the long line of our own well established cases have submitted such evidence to the jury to answer whether it was "indubitable?" Clearly it was not. As is said by the late Chief Justice GREEN, in Wojciechowski v. Spreckels' Sugar Refining Co., 177 Pa. 57, "No man's deed for the house he lives in would be safe if it could be destroyed on such evidence."

Counsel for appellant rely upon the decision in McCaw v. Union Traction Co., 205 Pa. 271, as ruling this case. There was evidence of fraud in procuring the release in that case; here there is none, only some slight evidence of incapacity on the part of plaintiff when he signed the release but nothing nearly sufficient to meet the decided weight of the evidence adduced by defendant, showing full mental capacity.

Besides, there being no fraud practiced in obtaining the release, the plaintiff ratified it by using the money weeks after with full knowledge of where it came from and made no offer to return it before bringing suit.

The assignments of error are overruled and the judgment is affirmed.