J-S53018-16

2016 PA Super 258

| ARMANDO DEL PIELAGO AND AIDA DEL PIELAGO, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| JEREMY ORWIG, | |
| Appellee | No. 156 MDA 2016 |

Appeal from the Order Entered December 24, 2015
In the Court of Common Pleas of York County
Civil Division at No(s): 2013-SU-2430-69

BEFORE:  BOWES, SHOGAN, and FITZGERALD,[*] JJ.

OPINION BY SHOGAN, J.:                              **FILED NOVEMBER 21, 2016**

Appellants, Armando Del Pielago ("Armando"), and Aida Del Pielago[1] ("Aida"), husband and wife, appeal from the order granting Appellee, Jeremy Orwig, summary judgment on December 24, 2015.  At issue is the validity of a general release signed by Appellants.  We reverse and remand.

The averments of the complaint that Appellants filed on September 11, 2013, allege that on July 14, 2011, Armando was operating his 2004 Chevrolet Trailblazer at 11:20 p.m. in York County, Pennsylvania, when Appellee, driving a 1999 Ford Taurus owned by his wife, failed to stop at a

---

[*] Former Justice specially assigned to the Superior Court.

[1] We note that Appellants' last name is variously spelled in the record also as del Peilago.

stop sign and "violently collide[d] into" Appellants' vehicle. Complaint, 9/11/13, at ¶¶ 1–6. As a result of the injuries sustained in the collision, Appellants, who contracted for the full tort option,[2] aver that Armando

> has been forced to undergo extensive physical therapy, nerve block injections, and surgery to repair a left rotator cuff tear, a surgery to his left wrist to correct traumatically induced carpal tunnel syndrome, as well as medical testing and evaluation for his tinnitus, headaches, dizziness, low back problems, left sided weakness, leg and heel pain, and visual field distortions, as well as depression, for which [he] claims damages.

*Id*. at ¶¶ 9, 10.

The trial court summarized the procedural history as follows:

> [Appellants] Armando and Aida Del [Pielago] initiated this action by filing a Complaint on September 11, 2013. [Appellee] responded to the Complaint on October 18, 2013 with New Matter. The Complaint followed a car accident involving Mr. Armando Del [Pielago], for which [Appellants] signed a pre-litigation release. The release was signed on July 26, 2011, at which time a check was tendered for $2,857.92.

> [Appellee] then filed a Motion for Judgment on the Pleadings on October 21, 2013. The Motion for Judgment on the Pleadings was denied by the undersigned on February 2, 2014. [Appellee] then filed a Motion to Rule on Objections, which was withdrawn on July 7, 2014. [Appellee] filed a Motion for Summary Judgment on February 12, 2015, which was denied on May 26, 2015.

---

[2] The full tort option permits an insured to seek recovery for all medical and other out-of-pocket expenses in addition to financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers. 75 Pa.C.S. § 1705(a)(1)(B); *Hoffman v. Troncelliti*, 839 A.2d 1013, 1015 (Pa. 2003).

> [Appellee] then filed his Second Motion for Summary Judgment on July 28, 2015. [Appellants] responded on August 17, 2015.

Trial Court Opinion (Summary Judgment), 12/24/15, at unnumbered 1–2.

The trial court granted Appellee summary judgment on December 24, 2015, and dismissed the action. Appellants filed the instant timely appeal to this Court on January 21, 2016.

Appellants raise the following single issue in their brief on appeal:

> 1. Whether there are triable issues of fact to be determined by a jury where releasing [Appellants] plead, and subsequently testify at depositions, that they signed a general release of liability, only because an unscrupulous insurance adjuster, through subtle misdirection, fraudulently induced them to sign the general release?

Appellants' Brief at 5.

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to relief as a matter of law. *Matharu v. Muir*, 86 A.3d 250, 255 (Pa. Super. 2014) (*en banc*) (citing Pa.R.C.P. 1035.2). "[A] factual issue is considered 'material' for summary judgment purposes if its resolution could affect the outcome of the case under the governing law." *Strine v. Commonwealth*, 894 A.2d 733, 737 (Pa. 2006). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party." *Kennedy v. Robert Morris Univ.*, 133 A.3d 38, 41 (Pa. Super. 2016), *appeal denied*, 145 A.3d 166 (Pa.

2016) (quoting **Summers v. Certainteed Corp**., 997 A.2d 1152, 1159 (Pa. 2010)).

We exercise plenary review in an appeal from an order granting summary judgment. **Dougherty v. Pepper Hamilton LLP**, 133 A.3d 792, 796 (Pa. Super. 2016). On appellate review, then, "we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." **Matharu**, 86 A.3d at 255. As an appellate court, we may reverse a grant of summary judgment only if there has been an error of law or an abuse of discretion. **Kennedy**, 133 A.3d at 41. "To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record." **Id**. Further:

> Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. **Chenot** [**v. A.P. Green Services, Inc.**, 895 A.2d 55, 60–61 (Pa. Super. 2006)] (citation omitted). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused. **Id**. at 61–62 (citation omitted).

**Dougherty**, 133 A.3d at 796.

Appellants assert that twelve days after the accident, on July 26, 2011, Mr. H. Jesse George, an adjuster from Progressive Insurance

Company, the insurer for both parties, went to Appellants' home without an interpreter, knowing that Appellants could not understand English, presented a check for $2,851.92 and a release, and induced Appellants to sign the release that day. Appellants' Brief at 10; Deposition of H. Jesse George, 11/18/14, at 14. Mr. George described his initial involvement in the matter as follows:

> I was assigned to their bodily injury claim and also their property damage claim. The Del Pielagos were also insured with Progressive. They had reported a claim under their own auto policy.
>
> A dual loss was set up under the other person's accident. I investigated the merits of that claim as far as liability is concerned and contacted the Del Pielagos regarding the property damage claim and Mr. Del Pielago's bodily injury claim.

Deposition of H. Jesse George, 11/18/14, at 14. Mr. George stated that Appellee was deemed to be at fault for the accident "for failure to yield right-of-way at a stop sign." *Id*. at 20.

Appellants maintain that Mr. George knew that Appellants could not speak or understand English sufficiently to comprehend a legal matter. Appellants' Brief at 19. They argue that Mr. George lied at his deposition, *inter alia*, about his belief that Armando sustained only minor injuries, that his actions did not suggest that the check he presented was for lost wages only, that he destroyed his hand-written notes from the July 26, 2011 meeting with Appellants, and that his actions amounted to bad faith and fraud. *Id*. at 22. Appellants suggest that the fraudulent conduct herein

- 5 -

while "subtle, it is provable." ***Id***. at 29. Appellants contend that whether

Mr. George committed fraud is a question of fact for a jury. ***Id***. at 31 (citing

***Greenwood v. Kadoich***, 357 A.2d 604, 606 (Pa. Super. 1976)).

The language of the release provided as follows:

FULL RELEASE OF ALL CLAIMS WITH INDEMNITY
(WITH LIMITED FUTURE EXPENSES)

Know all by these presents, that <u>Armando Del Pielago Sr. Aida Del Pielago</u> (Releasor), for and in consideration of the payment of<u> two thousand eight hundred fifty one ($2,851.92)</u>, the receipt and sufficiency of which is hereby acknowledged, do hereby for ourselves and for our heirs, executors, administrators, successors, assigns and any and all other persons, firms employers, corporations, associations or partnerships, acquit and forever discharge and his, her, their or its corporations, associations, or partnerships acquit and forever discharge <u>Jeremy Orwig & Heather Orwig</u> and his, her, their or its corporations, associations, or partnerships (Releasees) of, and from, any and all claims, actions, causes of action, demands, rights, damages, costs, loss of wages, expenses, hospital and medical and nursing expenses, loss of consortium, loss of service or affection, loss of society and companionship and any compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of an accident which occurred on or about <u>7/14/11</u> at or near <u>Hanover, PA</u>. In further consideration, the Releasees agree to pay reasonable and necessary medical and/or dental expenses and/or lost wages, not paid or payable by any other program, group contract or other arrangement, up to a maximum of <u>seven thousand ($7,000)</u> incurred by us within <u>45</u> days after the date of this Release, provided such treatment relates to the accident described above and would be recoverable by Releasor in a tort action in the courts of Pennsylvania under Pennsylvania law including but not limited to Act 6.

It is understood and agreed that this settlement is in full compromise of a doubtful and disputed claim as to both questions of liability and as to the nature and extent of the injuries and damage, and that neither this Release, nor the

payment pursuant thereto, shall be construed as an admission of liability, such being denied.

The undersigned hereby declare(s) and represent(s) that the injuries are or may be permanent and that recovery there from is uncertain and indefinite and in making this Release, it is understood and agreed that the undersigned rely(ies) wholly upon the undersigned's judgment, belief and knowledge of the nature, extent and duration of said injuries and liability therefore, and is made without reliance upon any statement or representation of the party or parties being released, or their representatives, or by any physician or surgeon by them employed.

In consideration of the payment of the sum and expenses indicated above, the undersigned further agrees to indemnify the above Releasees and save them harmless from any and all further liability, loss, damage, claims of subrogation and expense (other than the sum and expenses described in the first paragraph of this Release), arising because of any injuries and damages, and, if necessary in order to save them so harmless, to satisfy on their behalf any judgment against them arising in any way out of the aforesaid accident.

The undersigned further declare(s) and represent(s) that no promise, inducement or agreement not herein expressed has been made to the undersigned, and that this Release contains the entire agreement between the parties hereto, and that the terms of this Release are contractual and not a mere recital.

The undersigned has read the foregoing Release and fully understands it.


H. Jesse George 7/26/2011  x Armando del Pielago, Sr
Witness          Date          Releasor                      Date


                               x Aida del Pielago        07/26/11
Witness         Date------     Releasor                      Date

Release, Appellee's Answer and New Matter, 10/18/13, at Exhibit A.

"In Pennsylvania, it is well settled that the effect of a release is to be determined by the ordinary meaning of its language." **Pennsbury Village Associates, LLC v. McIntyre**, 11 A.3d 906, 914 (Pa. 2011). In the absence of fraud or mutual mistake a general release is enforceable according to its terms. **Brosius v. Lewisburg Craft Fair**, 557 A.2d 27, 29 (Pa. Super. 1989). With respect to general releases, our Supreme Court has held that "however improvident their agreement may be or subsequently prove for either party, their agreement, **absent fraud**, accident or mutual mistake, is the law of the case." **Buttermore v. Aliquippa Hospital**, 561 A.2d 733, 735 (Pa. 1989) (emphasis added).

In granting summary judgment and dismissing this case, the trial court stated as follows:

> [Appellants] have argued that they were unable to understand the release because they do not speak English well. **However, [Appellants'] daughter who also speaks and reads the English language was present at the time [Appellants] met with the adjuster**. [Appellants] were advised that they could have an attorney present, and **[Appellants'] daughter took notes on behalf of [Appellants], further demonstrating her understanding of the transaction.** While the Court does have concerns about the predatory nature of some adjusters, we must determine this case under the law and the facts of this case. To set aside a pre-litigation release based on fraud is a high burden that we do not find [Appellants] are able to meet.
>
> [Appellants] signed a release, took money offered to them, and were additionally informed that they may have an attorney present. They chose to take these actions on their own accord. Our presumption is in favor of the release signed by [Appellants], and [Appellants] would be unable to meet their burden to prove an avoidance of the release under the law.

- 8 -

Trial Court Opinion (Summary Judgment), 12/24/15, at unnumbered 4 (emphases added).

The pleadings in this case disclose unresolved issues of fact pertaining to the validity of the release. Appellants assert that they had no understanding of the release; indeed, they maintain that they were not even given the opportunity to read it. Rather, it was presented to them on an electronic tablet that Mr. George scrolled through rapidly. Deposition of Armando Del Pielago, 4/18/14, at 82–86; Deposition of Aida Del Pielago, 9/30/14, at 29, 42; Deposition of Aida Flores,[3] 9/30/14, at 35–36. While Appellants observed words and letters on the document, they did not read it or understand it, and they believed their signatures were required to receive a check for lost wages. Deposition of Armando Del Pielago, 4/18/14, at 82–86; Deposition of Aida Del Pielago, 9/30/14, at 15–17. Thus, they maintain their signatures on the release were a product of fraud or misrepresentation.

In **Hower v. Whitmak Associates**, 538 A.2d 524 (Pa. Super. 1988), this Court held that questions pertaining to intent and understanding in executing a release raise material issues of fact regarding the validity of the agreement. In **Hower**, mistake had been raised as a defense in the pleadings, and it was supported by evidence which became apparent during

---

[3] Aida Flores is Appellants' daughter. Deposition of Aida Flores, 9/30/14, at 7.

discovery. The appellant therein alleged actual misrepresentation by the insurance agent in informing her that the release would discharge only one of the parties, and the appellant's deposition recounted her failure to comprehend the meaning of the release. *Id*. at 528. Under these circumstances, we held that the trial court erred in entering summary judgment barring recovery. Similarly, in the instant case, Appellants have alleged facts that assail the validity of the release, and the facts are supported by evidence revealed during discovery. Summary judgment cannot be supported herein.

Whether fraud exists in the instant case is a matter properly presented to a jury. Nearly one hundred years ago, our Supreme Court examined a plethora of cases that presented jury questions regarding whether releases had been procured by fraud. The following cases, while found to not involve fraud in the inducement to sign a release, all make clear that it is for the jury to decide if fraud occurred, and the releaser's ability to read and understand is crucial to the determination:

> ***Pa. R. R. Co. v. Shay***, 82 Pa. 198. Plaintiff, who signed a release, said he could neither read nor write; but execution of the paper was not denied. He did not know contents of instrument, understood it to be simply a receipt for expenses, and did not intend to release damages when he put his name thereto. While the representative of defendant told plaintiff it was a receipt (as it was), it also was a release, which he did not tell plaintiff. The case was submitted to the jury, to find whether the release had been "obtained by fraud." We said there was no evidence to justify submission, and, applying the rule laid down by Chief Justice Gibson in ***Greenfield's Estate***, 14 Pa. 489, 496, "**If a party who can read** * * * will not read a deed put

- 10 -

before him for execution, * * * he is guilty of supine negligence, which * * * is not the subject of protection, either in equity or at law," we reversed a judgment for plaintiff. This authority is followed in many later cases, and is cited as late as *O'Reilly v. Reading Trust Co*., 262 Pa. 337, 343, 105 Atl. 542.

*Seeley v. Citizens' Traction Co*., 179 Pa. 334, 36 Atl. 229. Plaintiff, a woman, released damages for $25 six days after the accident. She testified that she did not "comprehend the nature of the writing." The trial court instructed for defendant, and we affirmed a judgment in its favor. No evidence of "trickery or fraud" appears; but the case is important here because we there recognize (179 Pa. 338, 36 Atl. 229), as a relevant consideration in passing upon the validity of the release, the fact that plaintiff was a person of "intelligence and fair education," as is the present plaintiff. *Bruns v. Union Traction Co*., 185 Pa. 533, 39 Atl. 1114. Plaintiff's husband was hurt at his work August 9, and died as the result thereof August 15. The day before his death he executed a release upon payment of $40. The evidence tended to show the paper was signed when deceased was "mentally competent," and after he had "bargained" with the representative of defendant company. The fact of this prior bargaining was taken into consideration in affirming judgment on a directed verdict for defendant, as it must be in the case now before us.

*Kane v. Chester Traction Co*., 186 Pa. 145, 40 Atl. 320, 65 Am. St. Rep. 846. Plaintiff, a woman, signed a release. She claimed it was obtained through fraudulent representations by defendant's agent, who told her the local judge was a stockholder in defendant company, and therefore she had no chance to win a suit at law. We said, assuming as a fact that such false statement was made, there was no "clear testimony" that it induced the execution of the release, and stated (186 Pa. 150, 40 Atl. 320, 65 Am. St. Rep. 846) the "flimsy nature" of the alleged misrepresentations was such as not to affect the judgment of a person of "common sense." We also said that "the fact that the injuries proved greater than they looked to be at the time of the release is not to be considered at all," citing *Seeley v. Traction Co.*, 179 Pa. 334, 36 Atl. 229. Judgment for defendant was affirmed. Here again the apparent "common sense" or **intellectual capacity of the person who signed the release is taken into account in passing upon the evidence as to its validity**.

- 11 -

In ***De Douglas v. Union Traction Co.***, 198 Pa. 430, 48 Atl. 262, binding instructions were given for defendant, and judgment in its favor affirmed. Plaintiff, a woman, signed a release, a few days after the accident, on payment of $50. She testified that an agent of defendant company called on her, paid the money, and asked for a receipt; whereupon she put her name to a paper which he produced. We held the proofs insufficient to overcome the release, saying that, when evidence to set aside a release is not "clear, precise, and indubitable," the issue "should be withdrawn from the jury." This is an authority that in such cases it may be the right and duty of the court to judge as to the sufficiency, in quality, of evidence to go to the jury on a question of alleged fraud in the procurement of a release.

* * *

***Laird v. Union Traction Co***., 208 Pa. 574, 57 Atl. 987. Plaintiff executed a release, on payment to him of $150, the day after the accident. A judgment for defendant, following binding instructions in its favor, was affirmed. Plaintiff claimed he was unconscious from his injuries when he executed the release. We said, "To set aside a written instrument the evidence must be "clear, precise, and indubitable," whether the allegation be fraud practiced by the beneficiary under it *i.e*., the person to whom the release is given, or incapacity on the part of him who executed it," and added there was no evidence of fraudulent representation or undue persuasion when the release was executed, but there was "some slight evidence on the part of plaintiff that he was in a state of unconsciousness" at that time. The case is treated as though there were no evidence of fraud present; and this apparently because of the insufficiency of the testimony as to plaintiff's unconsciousness; for, **if plaintiff were really in a state of unconsciousness when the release was taken from him, and defendant knew it, the obtaining of the paper under such circumstances would in itself be a fraud**. This authority is valuable here, for it clearly rules that the trial judge, in such cases, acts as a chancellor in passing on the legal sufficiency of the proofs (208 Pa. 576, 577, 57 Atl. 987), as to whether or not they measure up to the standard required, and, if he considers the evidence not of a quality to be reasonably found "indubitable," he should not let the jurors pass upon it.

> *Hicks v. Harbison-Walker Co*., 212 Pa. 437, 61 Atl. 958. Plaintiff, who signed a release on payment of $25, claimed the person who obtained his signature thereto "misrepresented it as a receipt for money donated to him." He could not read, and did not ask to have the paper read. We considered plaintiff's "mental capacity," and, noting that **his story was uncorroborated**, applied the rule from *Greenfield's Estate*, 14 Pa. 489. Judgment on binding instructions for defendant was affirmed.

*Ralston v. Philadelphia Rapid Transit Co*., 110 A. 329, 331–332 (Pa. 1920) (emphases added). In the following cases, fraud was found to exist, and all involved jury questions in the determination:

> *Ettinger v. Jones*, 139 Pa. 218, 21 Atl. 137, is one of those cases which must be confined to its own peculiar facts. A woman, whom defendant had got into trouble and promised to marry, signed a release, at his urgent solicitation, when she was under great mental stress. The only consideration was that imparted by the seal upon the instrument, and a renewal of the promise to marry when defendant got out of trouble with another woman. In affirming judgment for plaintiff, we held the release, obtained by "trick and fraud," was void.

> *Gibson v. W. N. Y. & Pa. R. R. Co*., 164 Pa. 142, 30 Atl. 308, 44 Am. St. Rep. 586, is a case where plaintiff proved that, when his name was put upon the release, he was **mentally incapable** from the effects of anaesthetics administered a short time before. Apparently it was not alleged defendant either knew of or took advantage of plaintiff's weakened mental state; the sole contention being that, owing to his lack of mind, no contract existed. In deciding **this issue was for the jury**, we said (164 Pa. 149, 30 Atl. 310, 44 Am. St. Rep. 586): "Where fraud * * * in the creation of the instrument is the defense, it is a purely equitable one, and equitable rules will be enforced as to the measure of proof to sustain it. But where the defense rests on the existence of a fact involving no element of fraud, the evidence is for the jury, under the common-law rules of evidence."

- 13 -

*Julius v. P., A. & M. Traction Co*., 184 Pa. 19, 39 Atl. 141, is much like the case just reviewed.  *Clayton v. Consolidated Traction Co.*, 204 Pa. 536, 54 Atl. 332.  Plaintiff, a woman, signed a release, upon payment of $5, ten days after the accident.  She afterwards claimed it was procured by fraud.  Judgment on a verdict against defendant was affirmed.  Plaintiff testified a man called at her house, claiming he was a friend of the car conductor who had caused the accident, and said he had come to see her in regard to getting the former reinstated in his position.  At a second interview this man inquired how much expense she had been put to, and, when told $5, he gave her the amount, asking for a receipt.  He produced a paper, **folded in such a way plaintiff could not read it**; **neither did he read it to her, but designated the place where he desired her to sign**.  Plaintiff did not know the man was a representative of the company.  This testimony was fully corroborated by a disinterested witness.  We said (204 Pa. 541, 54 Atl. 332) that **defendant's agent not only misrepresented the true character of the release, but "prevented" its contents from being known,** and this, taken with the other circumstances in the case, constituted such fraud as to avoid the instrument.  However, we there expressly recognized the authority of *Pa. R. R. Co. v. Shay*, 82 Pa. 198, and *De Douglas v. Union Traction Co.*, 198 Pa. 430, 48 Atl. 262, but distinguish them on their facts.  We also recognize the authority of *In re Greenfield's Estate*, 14 Pa. 489, and, in this connection, state that the mere circumstance of the release not being read to plaintiff would not convict defendant of fraud in procuring it.  Finally, we direct attention to the fact that the man who called upon plaintiff did not introduce himself as a representative of defendant, or in any sense negotiate for a settlement of her claim against the traction company, which, with other apparent features, distinguishes the case from the one now on appeal.

\* \* \*

*Gordon v. Great A. & P. Tea Co*., 243 Pa. 330, 90 Atl. 78.  Plaintiff signed a release, which he claimed was procured by fraud.  Judgment, entered on a verdict for plaintiff, was affirmed.  A payment of $150 had been made at the time the release was signed; but plaintiff presented evidence to show he was then in **an enfeebled mental condition**, as the result of a "head operation" necessitated by the accident; that the representative

- 14 -

of defendant informed him the $150 was a gratuity from his employers "to put" him over the holidays, and the word "release" was never mentioned; that a document was placed before him with only the signature line exposed, and **he was hurried in the execution of the paper, which the representative of the company stated was merely a receipt**. We said (243 Pa. 335, 90 Atl. 79) the evidence was sufficient to justify the plea that plaintiff's mind "was so enfeebled at the time he signed the paper that he could readily have been made a dupe of designing persons," and this, together with the other evidence in the case, was ample to sustain a finding that he was deceived and defrauded into the execution of the alleged release, adding that 'the fact that the plaintiff did not read or require the paper to be read to him" could not (under the peculiar circumstances) be given binding effect, for **he had not been afforded a "fair opportunity for examination" thereof, and had been deceived as to its contents**. We there note the distinction between cases where the effort is to "reform" and those in which the attempt is to "set aside" written instruments; also, in the latter class of cases, the difference between those where either the "element of fraud or mental enfeeblement" appears and instances where such elements are lacking. Here in the pending case the effort is to set aside the release, and, while fraud in its procurement is alleged, the evidence depended upon to prove that element fell short of the legal standard required for the purpose, as already shown in our review thereof, and as we shall hereinafter briefly discuss. The facts at bar and those in the last-cited case differ in many apparent respects.

***Lindemann v. Pittsburgh Rys. Co***., 251 Pa. 489, 96 Atl. 1085. Plaintiff signed a release upon payment to him of $50. At trial there was ample evidence, both lay and expert, to sustain plaintiff's contention that the **release had been executed when he was mentally incapable**; and the issue was decided accordingly. All that is said in the opinion of the court below affirming judgment on the verdict (adopted *per curiam*) must be read with the peculiar facts of the case in mind. This definition, relevant here, is there approved: "Indubitable proof * * * is evidence that is not only found to be credible, but of such weight and directness as to make out the facts alleged beyond a reasonable doubt."

In ***Hogarth v. Grundy***, 256 Pa. 451, 100 Atl. 1001, it was alleged plaintiff signed a release on payment of $200. Plaintiff

- 15 -

admitted some money was given him by his employers, but said it was at a time when he was suffering intensely from the effects of an amputated arm. The agent of defendant who called to get the release did not make known to plaintiff who he was, and the latter did not know him. He told the injured man that he was going to give him a "little money," as a "present" from his employers, "to help him out on expenses." Plaintiff had no recollection of signing the release, which contained only his mark, or any other paper, and **he denied that the man who brought the money said anything about a settlement of his claim against defendant**. He was **corroborated by his wife**. We affirmed judgment for plaintiff; but, as may be seen, the case is readily distinguishable from the one before us.

*Vanormer v. Osborn Machine Co*., 255 Pa. 47, 99 Atl. 161. Plaintiff signed a release in consideration of $1,150, and subsequently claimed it was secured by fraud. He testified the agent of the company which insured defendant obtained his signature by pretending to have a telephone conversation with his (plaintiff's) doctor, an eminent eye specialist, "in which the agent quoted the doctor," who had just examined plaintiff, as saying the latter's right eye "would come out all right, and he would soon be able to resume his work." The injured man, relying on the information thus conveyed to him as to his physical prospects for the future, signed the release; whereas the pretended conversation was an absolute fiction, and plaintiff soon afterwards lost the sight of his eye. We sustained a judgment entered on a verdict against defendant; for the evidence was ample in every way to show a direct case of fraud in the procurement of the release.

*Ralston*, 110 A. at 333–335 (emphases added).

All of these cases reveal that physical or mental incapacitation of the party presented with a release, his inability to read or understand, the existence of corroboration by another witness, and the presentation of a release under conditions identified as hurried and confusing impact the determination of alleged fraud in procuring a release or in taking advantage of a person's alleged incapacity at the time a release is signed. Moreover,

here, the conditions described were questions for a jury. All of the above cases emphasized that the particular facts and conditions present were to be evaluated on a case-by-case basis.

Roughly seventy years later, our Supreme Court discussed the validity of a release where the appellants alleged it was procured by fraud and claimed the insurance agent failed to fully explain its effect. ***Wolbach v. Fay***, 412 A.2d 487, 488 (Pa. 1980). Our Supreme Court explained that Mr. Wolbach admitted in a deposition that the release was in clear language, that he read it, **and that he understood the meaning of the words**. ***Id***. at 488 (emphasis added). The ***Wolbach*** Court stated, "Since there is no allegation of actual misrepresentation and appellant had an opportunity to read the release and admitted he understood it, we find there was no fraud." ***Id***. Thus, the Court concluded that it was proper to grant summary judgment. As a basic premise, then, a person's ability to read and understand the release is a paramount inquiry.

The instant case presents a completely contrary scenario to ***Wolbach***. In its Pa.R.A.P. 1925(a) opinion, the trial court addressed Appellants' allegations of fraud and Mr. George's actions in taking advantage of Appellants' inability to speak and understand English. The trial court stated, in pertinent part:

> Appellants have raised several factual issues in their Statement of Errors that are merely their beliefs, or issues that do not amount to disputes of material fact. They first raise that their daughter, Aida Flores, was not present at the time the

> release was signed, as was stated in this [c]ourt's [prior] Opinion.  Appellant fails to point to anywhere in the record where it specifies that Ms. Flores was in Mechanicsburg at the time of the meeting.  Further, extensive assertions were made in the pleadings that Ms. Flores was present and able to translate for her parents and take notes, which demonstrated her understanding of the conversation with the insurance adjuster, Mr. George.  Additionally, whether Ms. Flores was physically present or present on the phone is neither a genuine issue of material fact, nor is it sufficient evidence of fraud to require the issue to be presented to a jury.

Trial Court (Pa.R.A.P. 1925(a)) Opinion, 3/2/16, at unnumbered 1–2.

This explanation represents the trial court's paramount reason given in support of its decision to grant summary judgment.  As noted *supra*, in response to Appellants' complaint that they were unable to understand the release because they do not speak English, the trial court relied upon Appellants' daughter's alleged presence at the meeting between Mr. George and Appellants because she "speaks and reads the English language."  Trial Court Opinion (Summary Judgment), 12/24/15, at unnumbered 4.

The trial court does not identify any pleadings that set forth "extensive assertions" that the parties' daughter, Ms. Flores, was present at the meeting.  Trial Court (Pa.R.A.P. 1925(a)) Opinion, 3/2/16, at unnumbered 1–2.  Both Appellants, Mr. George, and Ms. Flores all testified in their depositions that Ms. Flores was **not** present when Mr. George procured Appellants' signatures on the release; rather she was at work, and Aida, her mother, telephoned her there.  Deposition of H. Jesse George, 11/18/14, at 36; Deposition of Armando Del Pielago, 4/18/14, at 81; Deposition of Aida

Del Pielago, 9/30/14, at 16; Deposition of Aida Flores, 9/30/14, at 18. The testimony of Appellants, that they had no understanding that they were signing a release and believed that it was merely confirmation of receipt of a check for lost wages, was corroborated by their daughter's testimony. Deposition of Armando Del Pielago, 4/18/14, at 15; Deposition of Aida Del Pielago, 9/30/14, at 15; Deposition of Aida Flores, 9/30/14, at 22–25. Ms. Flores specifically stated that she received an unexpected telephone call from her mother, who was very upset and confused, on July 26, 2011, while Ms. Flores was at work. Deposition of Aida Flores, 9/30/14, at 18, 19. Ms. Flores explained that she had very little time due to her job duties and that she did not know what was "going on" because she was "not there to see or just to be present there." *Id*. at 20. Ms. Flores testified that her mother never mentioned a release, and Ms. Flores stated that she understood that the purpose of Mr. George's visit was to give Appellants a check for Armando's lost wages. *Id*. at 23, 24. Thus, we reject the trial court's unsubstantiated explanation.

The trial court further defended the basis for its grant of summary judgment as follows:

> Appellants next state that the [c]ourt failed to consider divergences in testimony and their belief that the insurance adjuster lied under oath. These issues, as with the first issue raised, do not constitute genuine issues of material fact that would disallow this [c]ourt to grant summary judgment in favor of Appellee. Whether Mr. George used an electronic tablet is not a material fact, and further, the assertion that he lied under oath is simply the Appellants' belief.

Trial Court (Pa.R.A.P. 1925(a)) Opinion, 3/2/16, at unnumbered 2.

Mr. George, in his deposition, testified that he knew Appellants did not speak English, and Mr. George spoke no Spanish. Deposition of H. Jesse George, 11/18/14, at 31, 36. His previous discussions with Appellants noted a language barrier to communication. *Id*. at 62. Despite this impediment, Mr. George did not obtain an interpretor. *Id*. at 36. He stated it would have been his "practice and procedure" to explain the release to Ms. Flores, their daughter, and he subsequently stated that he recalled doing so on the telephone. *Id*. at 33–35. Mr. George admitted that Armando spoke no English, and Aida spoke very little English. *Id*. at 41. Curiously, Mr. George offered specific memory of facts that supported his position but claimed a lack of recall regarding all contrary assertions. *E.g.*, *id*. at 41, 44. Mr. George's testimony was entirely contrary to Appellants' and Ms. Flores's testimony on significant matters that went to the heart of the controversy and constituted genuine issues of material fact that should have compelled the trial court to deny summary judgment in favor of Appellee.

The trial court's further defense for its grant of summary judgment was as follows:

> Appellants additionally argue that Mr. George admitted that he was initially unable to communicate with Appellants. Regardless, as this [c]ourt noted in its Opinion granting summary judgment in favor of Appellee, Mr. George advised Appellants that they could have an attorney present, and Ms. Flores was available to translate.

Trial Court (Pa.R.A.P. 1925(a)) Opinion, 3/2/16, at unnumbered 2–3. Once again, the trial court fails to support its broad statements with specific reference to the record, and our independent review of the record does not support these claims. Mr. George did not state that he advised Appellants they could have an attorney present at their meeting. Appellant Aida stated that during the discussion "about two numbers," which was never explained, after the release was signed, Aida asked Mr. George if she was "going to need a lawyer," and "he say yes." Deposition of Aida Del Pielago, 9/30/14, at 39. Moreover, Ms. Flores was **not** available to translate, despite the trial court's statement to the contrary. Armando and Aida were consistent and adamant that they believed Mr. George was there to give them a check for Armando's lost wages to date, they were confused, they did not understand what was being said due to the language barrier, and Mr. George urged them merely to sign without explaining his purpose. Deposition of Armando Del Pielago, 4/18/14, at 79–86; Deposition of Aida Del Pielago, 9/30/14, at 15–35. Mr. George's responses to Aida's multiple complaints that she did not understand what he was saying were that **he** understood **her**. Deposition of Aida Del Pielago, 9/30/14, at 30, 35.

Finally, the trial court represented that

the document speaks for itself. It was signed, without duress, by two adult individuals. Appellants chose to sign a release of their own free will. If they did not understand what they agreed to and signed anyway, it is at their own peril, and does not constitute fraud nor warrant recovery under the law.

Trial Court (Pa.R.A.P. 1925(a)) Opinion, 3/2/16, at unnumbered 4. The certified record reveals, instead, that Appellants, individuals who do not speak English, were railroaded into signing this release, which they believed to be merely an acknowledgment of Armando's lost wages to date. Deposition of Armando Del Pielago, 4/18/14, at 79–86; Deposition of Aida Del Pielago, 9/30/14, at 15–35. Thus, application of the law to the facts herein dictates a reversal, and we conclude there exists a genuine issue of material fact, such that entry of summary judgment was inappropriate. The trial court erred in granting summary judgment in the face of pleadings and depositions raising a factual issue of possible fraud in the procurement of the release. *Hower*, 538 A.2d at 527.

For these reasons, and upon our complete review of the record, including the deposition testimony of 1) Appellant Armando Del Pielago on April 18, 2014, and September 30, 2014, 2) Appellant Aida Del Peilago on September 30, 2014, 3) Aida Flores, the parties' daughter, on September 30, 2014, and 4) H. Jesse George, the insurance adjustor, on November 18, 2014; the notes of Aida Flores, the computer entries made by Mr. George, and all of the pleadings filed in the case, we conclude the judgment exercised was manifestly unreasonable. There were sufficient factual allegations in the pleadings and depositions to raise a material issue of fact regarding Appellants' execution of the release, *see* Pa.R.C.P. 1035.1, a matter which justifies the submission of the issue to a trier-of-fact to

resolve. ***See***, ***e.g.***, ***Hower***, 538 A.2d 524; ***Buttermore***, 533 A.2d 481; and ***Cady v. Mitchell***, 220 A.2d 373 (Pa. Super. 1966). Thus, we reverse the entry of summary judgment and remand this case to the common pleas court.

Order granting summary judgment in favor of Appellee reversed. Case remanded. Jurisdiction relinquished.

Judge Bowes joins the Opinion.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/21/2016</u>